# CHARLES BIBEND v. THE LIVERPOOL AND LONDON FIRE AND LIFE INSURANCE COMPANY, CHARLES WEBB HOWARD, JAMES M. GOEWY, JOHN H. HOUGH, AND FRANK B. REYNOLDS.

ASSIGNMENT OF THINGS HAVING NO PRESENT EXISTENCE.—Courts of equity support and give effect to assignments of things which have no present actual existence, but rest in mere possibility; not as a present positive transfer operative *in presenti*, but as a present contract, to take effect and attach as soon as the thing comes *in esse.*

LIEN ON PERSONAL PROPERTY NOT IN EXISTENCE.—Whenever a person by a contract intends to create a lien upon personal property to be acquired by him, the lien attaches in equity upon the particular property as soon as he acquires a title thereto.

ASSIGNMENT OF A POLICY OF INSURANCE AS COLLATERAL SECURITY.—An assignment of a policy of insurance upon a stock of goods effected in the name of the assignor, made as collateral security for a debt due from the assignor to the assignee, with an agreement that in case of loss by fire the assignee shall collect the money and apply it on the debt, attaches in equity as a lien upon the amount due on the policy to the extent of the debt, as soon as the loss occurs, as against the assignor and all persons asserting a claim thereto under him.

IDEM.—Such assignment is not void under the Statute of Frauds, although not in writing, provided the policy is delivered to the assignee at the time the parol contract is made.

IDEM.—It is not necessary to the validity of such contract that the assignees have any interest in the property insured, nor that the insurer consent to the assignment.

IDEM.—In such case, the assignor, or one succeeding to his interest after the lien of the assignee attaches, has a right to the balance of the fund remaining after the payment of the debt due to the assignee.

INTEREST ON JUDGMENT.—A judgment can properly bear interest only from the time it is pronounced. Interest due on the demand on which the action is brought should be included in the judgment when entered.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

The insurance company made no defense.

The other facts are stated in the opinion of the Court.

*J. McM. Shafter*, for Appellants.

We insist that such an agreement as that between Wollstein & Mears, and Wegener & Shoenbar, cannot be sustained, upon the ground that Wegener & Shoenbar, having no interest whatever in the goods, cannot insure another's interest therein for their own benefit. It is a mere evasion of the principle which forbids gambling transactions relating to insurance, by requiring an " insurable interest " in the goods as to all who procure insurance for their benefit. (Ellis on Fire and Life Insurance, 62–66, 72.)

The doctrine stated is : " The party insuring must have an interest *in the property* insured to entitle him to recover. To permit the existence of wager policies upon such a subject as insurance against fire, would be a pernicious principle, as it would necessarily lead to the commission of those nefarious practices which it is one of the objects of legitimate insurance against fire to prevent.

The insurance must, therefore, be regarded as one for the benefit of Wollstein & Mears. It was taken in their name, upon their goods, and the premiums paid by their money.

This insurance was not assignable, except upon the transmission of the title to the goods, or some interest therein ; and this method of assignment could only be successful by the consent of the insurers—in short, by a novation of the con-

tract. (*Fogg et al.* v. *The Middlesex Mutual Insurance Co.*, 10 Cush. 337 ; *Buffalo St. Co. Works* v. *The S. Mu. Ins. Co.*, 17 N. Y. 401.)

It may be that the common law prohibition as to assignments of things in action, or only *in posse*, no longer exists. The rule, however, which forbids certain assignments upon the ground of public policy, and to prevent frauds, remains undisturbed.

Plaintiff sues either as assignee of the policy or of the money. He says he sues as assignee of the money.

It is difficult to see how the Statute of Frauds can be avoided. As this is a substantial defect of proof, plaintiff cannot recover. (*Green* v. *Palmer,* 15 Cal. 411.)

The statute (Wood's Digest, Sec. 551) awards interest upon all judgments.

This judgment, in effect, deprives Howard, Goewy & Co. of all interest; for the whole sum of six thousand five hundred dollars having been exhausted, there is no fund under the terms of the judgment to which resort can be had. We are entitled, therefore, to a personal judgment for interest beyond the particular fund mentioned in the judgment.

*W. P. C. Whiting,* for Respondents.

The transactions between Wegener & Shoenbar, and Wollstein & Mears, operated not to effect *an assignment of the policies,* but to constitute an *agency coupled with an interest.* The money to be collected from the companies, in case of loss, was to *belong* to Wollstein & Mears, and to be *applied* by their agents, Wegener & Shoenbar, to the payment of their indebtedness—that is, the notes for seven thousand four hundred and forty-six dollars and sixty-nine cents—and Wollstein & Mears might by action have enforced such an application of the money in case their agents had misapplied it. It was, practically, an equitable mortgage of the insurance money by a delivery of the policies, just as land may be mortgaged by a delivery of the title deeds—Wegener & Shoenbar having the right to collect the money and apply it *pro tanto* to the pay-

ment of the notes held by them, and being bound to pay over the remainder to Wollstein & Mears as the owners of the policies. (*Cromwell* v. *The Brooklyn Fire Insurance Co.*, 39 Barb. 234; *Dickinson* v. *Phillips*, 1 Barb. 454; *Shotwell* v. *The Jefferson Insurance Co.*, 5 Bos. 248.)

The respondent has never asserted a legal right under a *legal* assignment of the policies, but has insisted that the whole transaction between the parties has operated to give him—he being subrogated in the rights of Wegener & Shoenbar—an equitable lien upon a fund which arose out of and represents his own property. (*Lucena* v. *Crawford*, 3 Bos. & Pul., 75; 5 Id. 269; Story's Eq. Juris., Vol. I, Sec. 1,055.)

The claim of the respondent is not founded on the assignment of the policies, but upon the proposition that the fund that was to arise from loss was appropriated, and the policies were delivered as the insignia of the appropriation and the talisman with which to control the fund. (3 Kent's Com. 377, edition of 1860, and cases there cited.)

The statute does not give interest on all judgments, but only on "judgments for money lent, money due on settlements of accounts, and money received to the use of another;" and this is neither of those cases, but a judgment for the distribution of a fund.

By the Court, CURREY, C. J.:

Wollstein & Mears, partners in the trade of merchants, made application to the firm of Wegener & Shoenbar to indorse for their accommodation their promissory notes, amounting to fifteen thousand dollars, whereupon the latter firm consented to do so on condition that the stock in trade of the former firm should be insured through the agency of Wegener & Shoenbar, who should hold the policies, when effected, as collateral security for their liability as such indorsers, and also for any amount in which Wollstein & Mears should become indebted to them. To this Wollstein & Mears agreed, and thereupon Wegener & Shoenbar procured

11

three policies of insurance to be issued to Wollstein & Mears, amounting in all to the sum of twelve thousand dollars, and paid the premium on the same, charging what they so paid to Wollstein & Mears. These policies were thereafter held by Wegener & Shoenbar as security for their indorsements of the notes of Wollstein & Mears for the sum first named and for any further sum for which the last mentioned firm should become indebted to Wegener & Shoenbar. Shortly after this, Wollstein & Mears became indebted to Wegener & Shoenbar in the sum of thirteen thousand five hundred dollars, for merchandise. The parties had a settlement in June, 1863, when Wollstein & Mears made and delivered their promissory notes in the sum of nine thousand four hundred and forty-six dollars and sixty-nine cents to Wegener & Shoenbar, when it was again agreed between the parties that Wegener & Shoenbar should continue to hold the policies of insurance as security for the payment of the last mentioned notes and any further indebtedness that might accrue from Wollstein & Mears to Wegener & Shoenbar, and that in case of loss of the property insured by fire, Wegener & Shoenbar should collect the money from the insurance companies and apply it to the payment of such indebtedness. On the 11th of September, 1863, Wollstein & Mears paid two thousand dollars on account, and then for the balance of their indebtedness made and delivered to Wegener & Shoenbar new notes in the sum of seven thousand four hundred and forty-six dollars and sixty-nine cents, bearing interest at one and a half per cent per month from that day, and renewed their agreement last made in regard to the policies of insurance and collecting the insurance money in case of loss, applying it in payment of the amount due them.

On the 31st of October, 1863, Wegener & Shoenbar failed in business, at which time they were indebted to the plaintiff in thirty thousand dollars; and in part payment thereof they assigned and delivered to him the last named notes, and their interest in said policies of insurance, which he thereafter continued to hold in his possession. On the 14th of December of

the same year the property insured was destroyed by fire, in consequence of which Wollstein & Mears became insolvent, and on the 6th of January thereafter executed and delivered to the plaintiff an absolute assignment for a consideration expressed in the deed of assignment of said policies of insurance so held by him, and all claims which they had or held thereunder, and on the 16th day of February following the plaintiff gave the insurance companies notice of the circumstances under which he held the policies.

At the time of the loss of the property of Wollstein & Mears by fire they were indebted to the defendants, Howard, Goewy & Co., in the sum of twelve thousand two hundred and twenty-seven dollars and seven cents, and to certain other creditors, whose claims in the aggregate amounted to eleven thousand and twenty-four dollars. who on the next day assigned their respective claims to Howard, Goewy & Co., for the purpose of collecting them and paying over the proceeds to such assigning creditors; and on the same day Wollstein & Mears executed to Howard, Goewy & Co. a formal written assignment of said policies, and their demands against the insurance companies which had accrued on account of the loss by fire of the insured property, as security for the sum due from them to Howard, Goewy & Co. in their own right, and as assignees of said other creditors of Wollstein & Mears.

One of the policies was issued by the Liverpool and London Fire and Life Insurance Company, and was in the sum of six thousand five hundred dollars. Another of the policies was issued by the North British and Mercantile Insurance Company, and was in the sum of two thousand five hundred dollars; and still another of the policies was issued by the Imperial Insurance Company, and was in the sum of three thousand dollars.

Soon after Wollstein & Mears had executed to the plaintiff an absolute assignment of the policies of insurance, he gave the Liverpool and London Fire and Life Insurance Company notice of the assignment to him, and demanded of such company the sum of money secured by its policy. Before then

the loss had been ascertained and adjusted and the company had agreed to pay on demand the amount to whomsoever it was due. At that time the company had received notice of the claim of Howard, Goewy & Co., and therefore refused to comply with the plaintiff's demand until it should be settled as to which of the claimants the money was due. The plaintiff brought his action against the first named insurance company to recover the amount due for the loss, with interest, and against Howard, Goewy & Co. for the purpose of obtaining a decree declaring their claim null and void, and to enjoin them from asserting or prosecuting the same.

It is found by the District Court that at the time this action was commenced, like actions were commenced against each of the other insurance companies named, together with the defendants Howard, Goewy & Co., and that the plaintiff and Howard, Goewy & Co. had entered into a stipulation, in each of said actions, that if it should be found that the plaintiff was entitled to recover one portion of the aggregate sum of the insurance money, and Howard, Goewy & Co. another portion of the same, that in that case the amount so found due the plaintiff should be apportioned between or among all said insurance companies, and that judgment should be entered accordingly. From this stipulation we infer that the insurance companies other than the one which is defendant in this action, were respectively in the same condition as was the Liverpool and London Fire and Life Insurance Company, with respect to the claim of the plaintiff and that of Howard, Goewy & Co., and were at the time and still are ready to pay the amount due by their respective policies to whichever of the contending parties the sum may be found to be due. The matters in issue were tried by the Court, and as a conclusion of law from the facts found as above stated, the Court decided " that the plaintiff is entitled to a judgment against the said defendant, the Liverpool and London Fire and Life Insurance Company, for the sum of four thousand eight hundred and forty-six dollars and thirty-nine cents, with his costs to be taxed; and in favor of the defendants, Charles W. Howard, James M. Goewy, John

H. Hough and Frank B. Reynolds, constituting the firm of Howard, Goewy & Co., for the remainder of said sum of six thousand five hundred dollars, so found due from the defendant, the Liverpool and London Fire and Life Insurance Company." Judgment was thereupon entered in accordance with the decision of the Court, and from so much of the judgment as was in favor of the plaintiff, and also from so much thereof as adjudged that the plaintiff have and recover from the insurance company any sum of money whatever, the defendants, Howard, Goewy & Co., have appealed.

The appellants insist that the judgment is erroneous on two grounds: First, because a portion of the insurance money is adjudged to be due the plaintiff; and, second, because the judgment for the portion of the insurance money adjudged to be due the defendants, Howard, Goewy & Co,, bears interest only from the date of the judgment.

I. The first cause of error alleged involves the consideration in the first place of the character of the agreement between the firms of Wollstein & Mears on the one part, and Wegener & Shoenbar on the other, relating to the insurance to be effected and the assignment of the policies that might be obtained as collateral security to Wegener & Shoenbar; and in the second place, whether such transaction, if valid and effectual in other respects, was void as against public policy.

*Assignment of a policy of insurance as collateral security.*

The policies were issued to Wollstein & Mears. It was their property which was insured, and they were the persons assured against the loss, which it was in contemplation might happen by the destruction of the property by fire. By the original agreement between these firms the policies of insurance were to be held by Wegener & Shoenbar for a particular purpose, and the agreement was renewed at each settlement subsequently had between them. So long as Wegener & Shoenbar retained possession of the policies under the agreement subsisting, they had right to them as evidence of the agreement between the parties; which agreement was in effect that the

insurance money, in the event that the sum should become due by reason of the destruction of the insured property by fire, should thereupon become assigned to Wegener & Shoenbar as security for whatever might be due them from Wollstein & Mears.

Courts of equity are in the habit of giving effect to assignments of trusts and possibilities of trusts, and contingent interests and expectances, whether they are in real estate or in personal property, as well as to assignments of *choses in action.* Contingent rights and interests are not ordinarily assignable at law, but they are in equity. Assignments of such rights and interests, in being, are upheld and enforced by Courts of equity. And more than this, these Courts support and give effect to assignments of "things which have no present actual or potential existence, but rest in mere possibility; not indeed as a present positive transfer, operative *in presenti,* for that can only be done of a thing *in esse,* but as a present contract, to take effect and attach as soon as the thing comes *in esse.*" (2 Story's Eq., Sec. 1,040; *Mitchell* v. *Winslow,* 2 Story, 638, 644.) In *Mitchell* v. *Winslow,* Mr. Justice Story cites many authorities supporting this doctrine, and refers particularly to the opinion of Vice Chancellor Wigram, in *Langton* v. *Horton,* 1 Hare, 549, as exceedingly cogent in its reasoning and satisfactory in its conclusions, and he then says: "It seems to me a clear result of all the authorities that wherever the parties, by their contract, intend to create a positive lien or charge, either upon real or personal property, whether then owned by the assignor or contractor, or not, or if personal property, whether it is then *in esse* or not, it attaches in equity as a lien or charge upon the particular property, as soon as the assignor or contractor acquires a title thereto, against the latter, and all persons asserting a claim thereto, under him, either voluntarily, or with notice, or in bankruptcy." The case of *Field* v. *Mayor of New York,* 2 Selden, 186, is in support of the cases already mentioned, and is referred to in *Pierce* v. *Robinson,* 13 Cal. 123, as declaring the settled doctrine of equity on the subject. *Macomber* v.

*Parker*, 14 Pick. 497, is an authority proceeding upon the same principle. In that case, a brickmaker had stipulated with the lessees of a brickyard, in which he manufactured bricks, that they should retain the bricks to be made there, as security for their advances to him. The Court held the agreement to be one for the pledging of the bricks as they should be made, and that, although there cannot be a pledge, technically speaking, of a thing not in existence, there may be an hypothecation of it, so that as soon as the thing is produced the lien attaches to it; and that in that case the bricks became pledged as fast as they were manufactured; and the Court further held that the pledgee could maintain an action at law for the recovery of the possession of the bricks against the defendant, who, as an officer, had seized and taken them under a writ of attachment, issued in an action by a creditor of the pledgor against him. (Story on Bail, Sec. 294; 2 Story's Eq., Sec. 1,055.)

*Parol assignment of a policy of insurance and delivery of policy.*

We deem it unnecessary to refer to other decisions on the subject, as the doctrine laid down in the authorities cited seems to be well settled. But in relation to the contract between these firms, an objection is made on the part of the appellants touching the question of its validity, under the Statute of Frauds. The contract was not reduced to writing when it was made, nor had it been when the fire occurred, at which point of time, if at any time, it took effect as an assignment of the insurance money, as security for the debt due from the assured to the plaintiff. The section of the statute on which the appellants rely provides that every contract for the sale of any goods, chattels or things in action, for the price of two hundred dollars or over, shall be void, unless in writing, etc. This section has no reference or application, in our judgment, to a contract of the nature of the one in question. It relates to absolute sales and transfers of personal property and choses in action. The plaintiff had the rightful possession of the policies of insurance when the loss by fire

happened, at which time the insurance companies became indebted to the assured. The moneys due on the policies became assigned *eo instanti* with the destruction of the property, as security for the debt due the plaintiff. Having the possession of the policies when the fire occurred, the plaintiff had a vested interest in them and in the insurance fund, of which he could not be deprived by Wollstein & Mears, except by payment of the sum due him; and if the assignment which then became consummate could be held to amount to a sale of choses in action under the section of the statute referred to, it stood supported by the conditions of that section declared to be essential to its validity.

It has been held, says Judge Willard, that delivery, for a valuable consideration, of a chose in action, without writing is a sufficient transfer. "Thus, a judgment of a Court of record, a bond or covenant, and a mortgage of real estate, may be assigned orally, by mere delivery, without any instrument in writing declaring the transfer." (Willard's Eq. Juris. 462.) He further says: "There are cases in which something short of an actual transfer and delivery of a chose in action, will operate as an equitable assignment of the whole, or some part of it. No particular form of words is necessary for this purpose. Any language which indicates a clear intention to appropriate the fund will effectuate the object." We are of the opinion the statute does not affect in any manner the assignment which became consummate by the loss by fire of the insured property, and further we are of the opinion that the plaintiff, who succeeded to all the rights and interests of Wegener & Shoenbar in the premises, became entitled, upon the happening of the loss, to so much of the money which thereby became due from the insurance companies as was sufficient for the payment of the sums due him upon the notes assigned, provided the transaction between these firms relating to the insurance was not void as contravening public policy; we therefore proceed to consider the question on which the appellants chiefly rely.

*Assignment of policy of insurance to one having no interest in property insured.*

The appellants maintain that the insurance could not be assigned except upon the transmission of some interest in the property insured, and then only with the consent of the insurers ; which consent in such cases, from the time it may be given, operates as a contract on the part of the insurers to the assignee, having an interest in the subject of the insurance, according to the terms of the policy.   Upon this subject there is no room for controversy.   The doctrine is that the assured must have an interest in the thing insured at the time the insurers become bound to him by the contract or policy of insurance.   According to Lord Chancellor King, in *Lynch* v. *Dalzell,* 4 Brown, 431, and Lord Chancellor Hardwick, in *Sadlers' Co.* v. *Babcock,* 2 Atk. 554, an insurance against fire without an interest by the assured in the property lost, at the time of insuring, was void at common law ; and the reason assigned by elementary writers in support of this doctrine is, because of the temptations which would, by an opposite rule, be held out to the commission of arson, (3 Kent's Com. 171 ; Ellis on Insurance, 21 ;) and in order to entitle the party assured to recover, he must have had an interest in the property insured at the time of the loss ; for if he has no interest therein at the time of its destruction, he is not damnified, and therefore cannot be entitled to recover. (*Howard* v. *The Albany Insurance Co.* 3 Denio, 303 ; *Murdock* v. *The Chenango County Mutual Insurance Co.* 2 Coms. 216.)

The insurance in this case was effected in the names of Wollstein & Mears, upon their property, and the premiums were paid by them.   At the time of the fire the property belonged to them, and so did the policies of insurance.   At that time the plaintiff held the policies, not as the owner of them by title absolute, but as evidence of his right under the contract entered into between the firms mentioned, to receive of the insurance companies the money due Wollstein & Mears by reason of the loss by fire, and to appropriate sufficient of it

to the payment of the amount due on the notes assigned to him by Wegener & Shoenbar.

The subject to which the contract of these firms had reference was the money which might become due from the insurance companies in case of a loss of the property by fire. The effect of the contract was not to transfer the title and property of Wollstein & Mears in the policies. They had the power at any time to possess themselves of the policies by paying the amount due to Wegener & Shoenbar and relieving them from liability by reason of their indorsements, and they had the right, too, at the moment the plaintiff's lien on the insurance money attached, to discharge it by payment of the notes which had been assigned to him. (*Canfield* v. *Monger*, 12 John. 346.) At that time the plaintiff had no more than an equitable lien on the fund created by the concurrence of the loss and the liability of the insurers to pay it. The agreement respecting the policies and the money which might become due in case the insured property was destroyed by fire, did not operate, as we have seen, to pass the policies as property to Wegener & Shoenbar, nor did it operate to pass to them *in presenti* any interest in the fund that subsequently became due by reason of the loss, because no such fund had existence at that time. But the agreement did operate by way of a contract *in presenti*, to take effect and attach as a lien upon the fund when and as soon as the circumstances of the loss and the insurers' liability on account thereof might concur. (*Mitchell* v. *Winslow*, 2 Story, 639 ; *Wright* v. *Wright*, 1 Ves. 409, 411.) The fact that the title to the policies and to the insurance money when it, as a fund of indemnity for the loss, came *in esse*, remained in the parties insured ; and the further fact that the plaintiff's right in respect to it was that of a lien upon it merely subject to be discharged, at the will of his debtors, answers and obviates the objection that the contract and transaction between the firms of Wollstein & Mears of the one part and Wegener & Shoenbar of the other, was void as amounting to an assignment of the insurance to the latter firm, who had no insurable interest in the property insured.

At the time the appellants obtained their assignment from Wollstein & Mears, the plaintiff's equitable lien had attached, and the appellants acquired a right to such balance of the insurance fund as was in excess of sufficient to pay the plaintiff. The assignment to them was as collateral security for debts due them from their assignors. They parted with nothing as a consideration therefor, and hence they do not occupy the position of purchasers in good faith for a valuable consideration, without notice of the prior rights and equities of the plaintiff. Their position as to the plaintiff is no better than Wollstein & Mears would have been had no assignment been made to the appellants. They were entitled to what remained of the fund after the plaintiff might be paid, and that was the extent of their interest therein.

### *When judgments should bear interest.*

II. The appellants complain that the judgment restrains the recovery of interest from the date of judgment. A judgment can properly bear interest only from the time it is pronounced. If there be interest due on the demand on which the action is brought, it should be included in the judgment when entered. The judgment for plaintiff against the insurance company is for four thousand eight hundred and forty-six dollars and thirty-nine cents, and this judgment is to bear interest at the rate of ten per cent per year from the date thereof, until paid. The judgment in favor of the appellants against the insurance company is for the balance of the principal sum due from such company, to wit: the sum of one thousand six hundred and fifty-three dollars and sixty-one cents, and is to bear interest at the rate of ten per cent a year from the date of the judgment until paid, following which is the alternative clause, "or so much thereof as the said remainder of the said sum of six thousand five hundred dollars shall be sufficient to pay." This clause seems to have been incorporated in the judgment because the balance or remainder of the principal sum due from the insurance company became reduced by the costs recovered by the plaintiff.

The judgment, as an entirety, awards to the plaintiff the sum of four thousand eight hundred and forty-six dollars and thirty-nine cents, and also costs in the sum of one hundred and twenty-three dollars and fifty-one cents, and properly construed it awards to the appellants the remainder of the sum due from the insurance company, including the interest on the amount found due, or so much thereof as is necessary to pay this judgment. We think the plaintiff was entitled to the sum awarded him and also to the costs which he was compelled to pay in the prosecution of his suit. If the appellants had not contested the plaintiff's claim he might have obtained his due before he was compelled to bring his action ; and but for the appellants' claim it is fair to presume from the circumstances the insurance company would have paid the amount, as it was ready and willing to do. We think the rights of the parties were adjusted and the case was decided upon just and fair principles, and that the judgment should be affirmed, and it is accordingly so ordered.

Mr. Justice SHAFTER being disqualified, did not participate in the decision of the case.