[Civ. No. 5719. Third Appellate District.—October 18, 1937.]

BANK OF CALIFORNIA (a National Association) et al., Appellants, v. CHARLES V. McCOY, Sheriff, etc., et al., Respondents.

Rich, Weis & Carlin for Appellants.

Ray Manwell and Ivan C. Sperbeck for Respondents.

PLUMMER, J.—A rehearing was granted in this cause by reason of the fact that all of the occurrences involved in this action took place prior to the act of the legislature (Stats. 1935, p. 2225), amending section 2957 of the Civil Code relative to the rerecording of chattel mortgages, and, therefore, the section as amended should not have been considered or followed in the decision of this cause.

On the original hearing the opinion prepared for this court by Judge Maxey (sitting as a justice *pro tempore*), is so complete as to the facts involved and some of the questions considered, that we here readopt the main portion thereof, as follows, to wit:

"On October 31, 1928, Sidney V. Smith, Jr., made, executed and delivered a promissory note, payable on demand, to the plaintiffs herein. On June 1, 1930, Sidney V. Smith, Jr., made, executed and delivered a second and separate promissory note, payable one day after date, to the plaintiffs herein. On this latter date, namely, June 1, 1930, to secure the payment of the two notes, the said Sidney V. Smith, Jr., made and executed a chattel mortgage which was duly recorded in Yuba county, California. The property described in said chattel mortgage was as follows: '1 Willys Knight automobile truck, bearing the motor number 38188 and serial number 36027; 1 Star Roadster automobile, bearing the motor number 14L22181; 50 head of horses, together with the increase of said horses, and all ranch and farming implements, household furniture, kitchen utensils and equipment and other livestock and other personal prop-

erty now or hereafter belonging to the mortgagor, and now or thereafter situated on the real property in the County of Yuba, State of California, more particularly described as follows, to-wit: The south half of the south half of Section 14, and the north half of Section 23, Lot 1 of the Southeast quarter, and the northeast quarter of the southeast quarter of Section 23, all in Township 16 North, Range 5 East, Mount Diablo Base and Meridian, Yuba County, California.'

"That on the 17th day of September, 1932, the plaintiffs herein and said Sidney V. Smith, Jr., entered into an agreement in writing, extending the time of payment of the note dated October 31, 1928, and on the 27th day of April, 1934, the plaintiffs herein and the said Sidney V. Smith, Jr., entered into an agreement extending the time of payment of the note dated June 1, 1930. Neither of these agreements was ever acknowledged before an officer authorized to administer oaths, and neither of these agreements was ever recorded.

"Subsequent to the execution of the chattel mortgage the said Sidney V. Smith, Jr., in an independent transaction and without using any of the funds mentioned in the chattel mortgage, purchased approximately 200 head of sheep, which were thereafter taken by him onto the lands and premises mentioned in the chattel mortgage. These sheep were not paid for in full until the year 1933.

"On the 6th day of May, 1935, the defendant, Charles J. McCoy, as sheriff of the county of Yuba, at the instance and request of defendant, Byron Burris, a judgment creditor of said Sidney V. Smith, Jr., levied a writ of execution against the sheep and took them into his possession. The plaintiffs thereafter demanded the release of said sheep from the sheriff, which demand was refused. Thereafter, the defendants, Byron Burris, Annie Burris and Evelyn Wright, delivered to defendant Charles J. McCoy, as sheriff, an undertaking guaranteeing to save the sheriff harmless from any claim of the plaintiffs herein by reason of the levy of the execution above mentioned. This undertaking was given pursuant to the provisions of section 2969 of the Civil Code. Thereafter, and on the 29th day of May, 1935, the sheriff sold the sheep at execution sale to the defendant, Byron Burris, and delivered the possession of said sheep to the said Burris.

"This action was brought by the plaintiffs herein upon the bond given by the defendants to the sheriff, seeking to recover from said defendants the value of the sheep so sold under execution. At the time of the levy of the execution, the recorded mortgage indicated that the notes had been barred by the statute of limitations. No notice was given the judgment creditor of the extension agreement between the plaintiffs and Sidney V. Smith, Jr., relative to these notes. ■ Two questions are herewith presented for our determination: 1st. Is the wording of the mortgage, 'and other livestock . . . now or hereafter belonging to the mortgagor, and now or hereafter situated on the real property', described in the mortgage, sufficiently comprehensive and effectual to cover after acquired livestock having no actual or potential existence at the time of the execution of the chattel mortgage, as against a subsequent lienholder or a judgment creditor?

"2d. Is an agreement between a mortgagee and a mortgagor extending the time of payment of a promissory note, secured by a chattel mortgage, beyond the time prescribed by the statute of limitations, and which agreement is not acknowledged nor recorded, binding upon subsequent lienholders or a judgment creditor?

"We will discuss these questions in the order in which they are hereinabove presented. . . .

"The primary purpose of a chattel mortgage is to transfer the title of personal property to another as security for the payment of money or the performance of contracts or other obligations. It is a contract by which specific property is hypothecated for the performance of an act, without the necessity of change of possession. (Civ. Code, sec. 2920.)

"Civil Code, section 2883, provides: 'Lien on future interest. An agreement may be made to create a lien upon property not yet acquired by the party agreeing to give the lien, or not yet in existence. In such case the lien agreed for attaches from the time when the party agreeing to give it acquires an interest in the thing, to the extent of such interest.'

"Section 2930 of the Civil Code provides: 'Subsequently acquired title inures to mortgagee. Title acquired by the mortgagor subsequent to the execution of the mortgage, inures to the mortgagee as security for the debt in like manner as if acquired before the execution.'

"The common law required the actual transfer of possession of chattels to make a mortgage thereon effectual; the code, however, substitutes, instead of the actual possession previously required, the recording provisions of the Civil Code. There have been further substitutions and deviations to include property *in esse* or having a potential existence at the time of the execution of the mortgage, but these latter matters are not involved in the instant case, as it is conceded that the property sought to be covered by the chattel morgage in question was not *in esse* and did not have a potential existence at the time of the execution of the mortgage.

"It must be conceded that an individual has a perfect right, under any and all circumstances, to enter into any contractual relations or agreements with a party that he might desire, so long as that contractual relationship does not interfere with the rights of innocent third persons. It must therefore follow that as between the parties to the mortgage, and in view of the code provisions hereinbefore specified, a mortgagor has a right not alone to mortgage property that is *in esse* or that has a potential existence, but may make an agreement to include within the mortgage any after-acquired personal property. Undoubtedly, in the case at bar the mortgage is effectual as between the parties thereto.

"Section 2957 of the Civil Code specifies the incidents upon which a chattel mortgage is void as to third persons, and it seems clear that any chattel mortgage which conforms to the requirements of said section, is not void as to third persons. It must, therefore, follow as a natural consequence that if the mortgage is valid as between the parties thereto, and if there is no prohibition making said mortgage void as to third persons, that the terms thereof must be binding upon those who take with notice; if a mortgage is properly recorded, it is binding upon subsequent lienholders or a judgment creditor to the same extent that it would be binding upon the original mortgagor, and any property included in said mortgage could not be levied upon by attachment or execution. The lien of the creditor could not attach until the levy of the writ of execution of attachment has been made, which would of necessity be after the recordation of the mortgage. The description of the property mortgaged was sufficient. (*Ramsey* v. *Furlott,* 14 Cal. (2d) 145 [57 Pac. (2d) 1007].)

"While this court is not in any way bound by the decisions of the federal courts, nevertheless, the reasoning and logic of the learned justice as set forth in the case of *Mason* v. *Citizens' Nat. Trust & Sav. Bank,* 71 Fed. (2d) 246, a case which arose in this state, and in which the facts parallel the facts in the instant case, are deserving of our approval. After a thorough discussion of the code provisions of California pertaining to questions of this particular kind and character, and after reviewing all of the California decisions applicable thereto, the court, in concluding its opinion, states at page 255: 'To recapitulate, then, we conclude that the California statutes are sufficiently general to include chattel mortgages in their provisions authorizing liens on after-acquired property. We further believe that those provisions do not contain, either specifically or inferentially, any exceptions in favor of subsequent purchasers, creditors, or encumbrancers, provided that the mortgages are properly recorded. Finally, the decisions of the California courts and the supreme courts of other states, as well as the United States Supreme Court and a number of other federal tribunals, have upheld the validity of chattel mortgages on after-acquired property, even as against subsequent lienholders' . . . ''

While the appellant has cited several cases bearing upon the question of liens being created to take effect upon after-acquired property, which cases we will hereafter cite, the provisions of two sections of the Civil Code seem to completely cover that question. Section 2877, *supra,* reads: ''Contracts of mortgage, pledge, bottomry, or *respondentia,* are subject to all the provisions of this chapter.'' Following this section we find section 2883, *supra,* contains the following: ''An agreement may be made to create a lien upon property not yet acquired by the party agreeing to give the lien or not yet in existence. In such case, the lien agreed for attaches from the time that the party agreeing to give it acquires an interest in the thing, to the extent of such interest.'' We may also add the language of section 2884, *supra,* to wit: ''A lien may be created by contract, to take immediate effect, as security for the performance of obligations not then in existence.'' The mortgage involved in this action provided for its obligation upon subsequently acquired property. The chattel subsequently acquired consisted of a band of sheep.

Thus, in the case of *Bibend* v. *Liverpool Insurance Co.,* 30 Cal. 78, in considering section 2930 of the Civil Code relative to after-acquired titles, the Supreme Court used language which is applicable here. We quote the following: "It seems a clear result of all the authorities that wherever the parties, by their contract, intend to create a positive lien or charge, either upon real or personal property, whether then owned by the assignor or contractor, or not, or if personal property, whether it is then *in esse,* or not, it attaches in equity as a lien or charge upon the particular property as soon as the assignor or contractor acquires title thereto under him, either voluntarily or with notice, or in bankruptcy." Accordingly, the principle set forth in section 2883, *supra,* was approved in one of the earliest cases touching upon the subject of after-acquired titles. The following cases inferentially, if not directly, follow the rule set forth in section 2883, *supra,* to wit: *Hall* v. *Glass,* 123 Cal. 500 [56 Pac. 336, 69 Am. St. Rep. 77]; *Mason* v. *Citizens' Nat. Bank of Los Angeles,* 71 Fed. (2d) 246, likewise, follows the rule, and decided the case before it according to the provisions of section 2883, *supra.*

The following case may also be cited in support of what we have set forth: *Dover Lumber Co.* v. *Case,* 31 Idaho, 276 [170 Pac. 108]. Other cases might be cited, but the language of the code sections which we have quoted seems so clear and decisive as not to call for any interpretation, and that in this case the law is firmly established that a chattel mortgage may provide for the lien applying to subsequently acquired personal property, and that the lien attaches immediately upon the acquisition of such property by the mortgagor.

In this case the parties entered into an agreement extending the time of payment of the notes referred to and secured by the chattel mortgage. That such an agreement extending the lien of the chattel mortgage is valid and binding as to all parties is amply supported by the following cases: *Ekmann* v. *Plumas County Bank,* 215 Cal. 671 [12 Pac. (2d) 433]; *Wood* v. *Willey,* 136 Cal. App. 197 [28 Pac. (2d) 367]; *Newhall* v. *Hatch,* 134 Cal. 269 [66 Pac. 266, 55 L. R. A. 673].

The extension agreement appears to have been fully executed between the mortgagor and mortgagee prior to the acquisition of any rights of Byron Burris, Annie Burris and

Evelyn Wright, or any one of them. The contention of the plaintiffs that no rights were waived by failing to call the extension agreement to the attention of the sheriff at the time the sheep were levied upon, appears to be well taken.

■  Section 2969 of the Civil Code specifies the action to be taken by an officer making a levy upon mortgaged property, and if an officer levies or sells mortgaged personal property, he is guilty of conversion.  (23 Cal. Jur., p. 308.)

■  It also appears from the record that the plaintiffs in this action took a subsequent mortgage upon other property; that the taking of additional security does not waive the lien of a prior mortgage is clearly shown by the following quotation from Corpus Juris, to wit: ''The lien of a mortgage is not affected or postponed by the taking of another mortgage to secure the same debt which is intended to be merely cumulative to the first and not in substitution for it.''  (41 C. J. 514.)  We may also cite, to the same point, *White* v. *Stevenson*, 144 Cal. 104 [77 Pac. 828].  This mortgage described property other than that included in a prior chattel mortgage, and appears to have been only cumulative.

This cause, as to the damages, to wit, the value of the sheep taken by the sheriff and sold, was tried before a jury.  The jury found the value of the sheep to be the sum of $2,254. It is stipulated that the value of the plaintiffs' attorneys' fees was the sum of $250.

It follows from what we have said that the judgment should be reversed with directions to the trial court to enter judgment in favor of the plaintiffs for the value of the sheep so taken and sold by the sheriff in the sum of $2,254, with attorneys' fees fixed at the stipulated sum of $250, and costs of suit.

Pullen, P. J., and Thompson, J., concurred.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 16, 1937.