In the Matter of Pasqual Patrick PIRO, Sr., aka Pat Piro, individually and dba Boys Towne, Bankrupt.

No. 8368–K–S.

United States District Court, S. D. California.

Sept. 24, 1971.

Leland Featherman, San Diego, Cal., for Bankrupt.

Theodore W. Graham, San Diego, Cal., for trustee.

Herbert Katz, San Diego, Cal., for respondent, L. H. J. Enterprises, Inc.

## MEMORANDUM OPINION

SCHWARTZ, Chief Judge.

This is a petition directed to the Court for review of the referee's decision adjudging that respondent was a secured creditor of the bankrupt and that respondent's lien attached to the proceeds of the sale at public auction of the inventory of the bankrupt.

Briefly stated, the facts are as follows. On July 22, 1966, by a written agreement, L. H. J. Enterprises, Inc. (hereinafter respondent) sold to the bankrupt all of the inventory of clothing and fixtures of a business known as Johnson's Ltd. located at 7644 Girard Avenue, La Jolla, California. Pursuant to the agreement, the bankrupt executed a promissory note in the sum of $18,585.55. The bankrupt also executed a security agreement in favor of respondent in and to all of the inventory of boys clothing and designated fixtures, and "any and all additions, accessions and substitutions thereto or therefor". The agreement stated that the respondent's interest therein was a purchase money security interest.

The parties to the agreement executed and duly recorded a financing statement which provided that it covered "inventory of boys clothing now and hereafter contained in the premises at 7644 Girard Street, La Jolla, California."

On March 10, 1970, the bankrupt filed a voluntary petition in bankruptcy. By that time, the bankrupt had defaulted on the promissory note, and the sum of $5,143.92 with interest from October 21, 1969 was due and owing to the respondent.

The referee held that the respondent's lien was valid and attached to the proceeds of a sale, at public auction, of the fixtures and equipment and the inventory of clothing held by the receiver on April 7, 1970. The lien attached to the proceeds to the sum of $4,143.92 plus interest. Subsequently, the trustee filed a petition for review of the referee's order.

In reviewing the actions of a Referee in Bankruptcy, Rule 52(a) Fed. R.Civ.P. and General Order in Bankruptcy 47, 28 U.S.C.A., direct that the District Court shall accept findings of fact unless clearly erroneous. This standard does not apply to legal conclusions. Minnick v. Lafayette Loan & Trust Co., 392 F.2d 973 (7th Cir., 1968). The referee's conclusions of law, while entitled to respect, cannot be approved without the District Court's independent determination of the law. In re Newcomb Interests, Inc., 171 F.Supp. 704 (N.D.Calif., S.D., 1959), 5 Moore, Federal Practice, ¶53.12(5) at 3021 (2d ed., 1969), 2 Collier, Bankruptcy, § 39.28 at 1519 (14th ed., 1971).

The trustee has argued that the respondent's lien is invalid under the prohibition, peculiar to California, against security interests in certain types of inventory of retail merchants. The relevant section is § 9102(4) of the California Commercial Code.

> § 9102(4)  Notwithstanding anything to the contrary in this division, no nonpossessory security interest, *other than a purchase money security interest*, may be given or taken in or to the inventory of a retail merchant held for sale, except in or to inventory consisting of durable goods having a unit retail value of at least five hundred dollars ($500) or motor vehicles, house trailers, semitrailers, farm and construction machinery and repair parts thereof, or aircraft. [emphasis added]

█ The threshold question is: Can the exception for purchase money security interests extend to after acquired property? This is a question of first impression, and therefore, § 9102(4) must be interpreted in light of legislative intention, prior California law, and the overall policy of the California Commercial Code.

Section 9107 provides a definition of "purchase money security interest."

> § 9107  A security interest is a "purchase money security interest" to the extent that it is (a) Taken or retained by the seller of the collateral to secure all or part of its price; or (b) Taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used.

The trustee has argued that § 9107 should be given a very "definite and limited meaning" but the California Code Comment to § 9107 indicates that the scope of the § 9107 purchase money security interest overlaps the former devices of the conditional sale, chattel mortgage, trust receipt and inventory lien. California Commercial Code Annotated at p. 362 (West, 1964). Further-

more, § 1102(1) directs that the Commercial Code be liberally construed.

A major innovation of the Uniform Commercial Code as adopted in California is that the floating lien is no longer disfavored. See §§ 9204, 9108 and 9205. The Uniform Commercial Code Comment to § 9204 discusses the prejudice against the floating lien:

> The widespread nineteenth century prejudice against the floating charge was based on a feeling, often inarticulate in the opinions, that a commercial borrower should not be allowed to encumber all his assets present and future, and that for the protection not only of the borrower but of his other creditors a cushion of free assets should be preserved. That inarticulate premise has much to recommend it. This Article decisively rejects it not on the ground that it was wrong in policy but on the ground that it has not been effective. In the past fifty years there has been a multiplication of security devices designed to avoid the policy; field warehousing, trust receipts, "factor's lien" acts and so on. California Commercial Code Annotated, pp. 407–408 (West, 1964).

Any consideration of the meaning of the "purchase money" exception to the prohibition of § 9102(4) must be taken in light of the Code's rejection of the prejudice against the floating lien. The parties responsible for the drafting of § 9102(4) did not expressly limit the "purchase money" exception to the specific items of collateral sold to the debtor by the creditor, nor did they prohibit the use of the after acquired property clause in conjunction with purchase money security interests in inventory. The overall code preference for purchase money security interests, and rejection of the prejudice against floating liens, operate to place the burden on the trustee to demonstrate that the legislative intent was to place a strict limitation on the "purchase money" exception to the prohibition of § 9102(4).

█ It is clear that the intention behind the peculiar California limitation

**174**

on security interests in inventory of retail merchants was to preserve pre-Commercial Code California law. The "old" law did not prohibit the creation of all security interests in retail inventory. It appears, although there is no clear authority, that under the pre-Commercial Code law the chattel mortgage or the conditional sale device could be used to set up purchase money security interests in inventory. *See,* Summers, Security Interests in a Retail Merchant's Inventory: California Amends ·the Uniform Commercial Code, 16 Stan.L.Rev. 149, 150. Furthermore, chattel mortgages accompanied by after acquired property clauses were recognized prior to the adoption of the U.C.C. in California. Bank of California v. McCoy, 23 Cal. App.2d 192, 72 P.2d 923 (1937).

Under pre-Commercial Code law in California, it was possible for a clever seller to tie up the inventory of a retail merchant, both present and "after acquired", by a series of security interests in the goods and the proceeds of the goods. New purchase money loans of the proceeds would continue sellers' security interest, resulting in a floating lien. Because a continuing interest in inventory of a retail merchant could be achieved under the complexities of the pre-Commercial Code law, it does not seem likely that the draftsmen intended to limit the "purchase money" exception to § 9102(4) without explicit language to that effect. And if the exception were limited, as the trustee argues, the purchase money security interest in inventory would be commercially meaningless because of the rapid turnover in inventory normally experienced by retail merchants dealing in goods with a unit value less than $500.00.

The underlying purposes and policies of the Commercial Code are set forth in § 1102(2):

(a) To simplify, clarify and modernize the law governing commercial transactions;

(b) To permit the continued expansion of commercial practices through custom, usage and agreement of the parties;

(c) To make uniform the law among the various jurisdictions.

The strict interpretation of "purchase money security interest" urged by the trustee runs counter to the rules of construction and the purposes and policies of § 1102.

A further possible argument against the recognition of respondent's security interest in the "after acquired" inventory of the bankrupt is that subsequent creditors may be misled or in some way harmed by recognition of after acquired property liens. But if this argument had any weight, then all floating liens would be susceptible to it. Most importantly, the Commercial Code depends on the concept of constructive notice through the recording procedures. The respondent duly· executed, filed and recorded the security agreement. Subsequent creditors were put on notice of respondent's claims against the inventory of the bankrupt.

It is concluded that the referee correctly determined that respondent's lien is a valid purchase money security interest in inventory and attaches to the proceeds from the sale of the inventory of the bankrupt. The order of the referee is affirmed.