INTER MOUNTAIN ASSOCIATION OF CREDIT MEN, a Utah corporation, Plaintiff and Appellant,

v.

The VILLAGER, INC., a Delaware corporation, and Villager Industries, Inc., a corporation, Defendants and Respondents.

No. 13377.

Supreme Court of Utah.

Oct. 15, 1974.

Herschel J. Saperstein, Moyle & Draper, Salt Lake City, for plaintiff and appellant.

Ralph J. Marsh, Backman, Backman & Clark, Salt Lake City, for defendants and respondents.

CALLISTER, Chief Justice:

Plaintiff, an assignee for the benefit of creditors, initiated this action for a determination of the respective rights in proceeds of certain inventory with defendant. Plaintiff pleaded that the trial court declare null and void certain security agreements wherein defendant was the secured party and further determine that defendant did not have a security interest in the inventory or the proceeds from the sale thereof, liquidated by plaintiff. Defendant answered and counterclaimed, pleading that it had a valid security interest in all the inventory and proceeds of plaintiff's assignor, The Company Enterprises. Defendant pleaded that the court decree its security interest a valid prior lien in the funds received by plaintiff and that it be awarded the total indebtedness incurred pursuant to the security agreements, including costs and attorney's fees.

Both parties entered into a stipulation of facts and moved for summary judgment. The trial court awarded defendant priority to a portion of the proceeds derived from inventory. Plaintiff appeals, and defendant cross-appeals.

On September 3, 1971, The Company Enterprises, a Utah corporation, doing business under the name of Village Ltd., The Company, The Village Brownstone at Salt Lake City and Ogden, made as assignment for the benefit of creditors to plaintiff. The Company Enterprises was the survivor of the merger of four domestic corporations, The Village of Ltd., The Village Brownstone, Ltd., and Village Brownstone Enterprises. The certificate of merger was issued by the Secretary of State on July 30, 1970.

There were three security agreements upon which defendant predicates its claim of priority. Plaintiff concedes that defendant's claim should be allowed, the issue is the extent to which its claim for priority over the general creditors is established. The Village Brownstone, Ltd., with its principal place of business at 22 East First South in Salt Lake City, entered into a security agreement with The Villager, Inc. on March 29, 1968. The former was the debtor and the latter was the secured party. The agreement provided:

2. To secure the indebtedness set forth above, the Undersigned hereby grants to Villager, a security interest in and to all of the Undersigned's present and future accounts, contract rights, general intangibles, instruments, documents, chattel paper, and a purchase money security interest in the inventory wherever located, and the proceeds and products thereof (all hereinafter called the "collateral"), together with all other items of Collateral of the same class or classes acquired by the Undersigned after the execution of this agreement and prior to its termination.

The security agreement further provided that the debtor would keep the collateral located at the premises set forth in the agreement; that it would be deemed a default if the debtor made an assignment for the benefit of creditors; and that the parties named therein should include the successors or assigns of those parties.

A financing statement covering the property of this security agreement was filed March 19, 1968, wherein it was indicated that it covered all present and future accounts, general intangibles, instruments, documents, chattel paper and inventory.

The statement further provided: "The secured party claims a purchase money security interest in the inventory." The proceeds and products of the collateral were further indicated as covered.

A second security agreement was entered between The Village Brownstone, Ltd., d. b. a. Village Brownstone, at 2354 Washington Boulevard, Ogden, and The Villager, Inc. on November 29, 1968. The relevant provisions of this security agreement were identical with those in the agreement of the debtor, concerning its store in Salt Lake City. A financing statement was filed on April 14, 1969, which provided that the property covered: "All present and future accounts, contract rights, general intangibles, instruments, documents, chattel paper and inventory wherever located." The proceeds and products of the collateral were also covered.

The third security agreement was entered into between Village Brownstone Enterprises, d. b. a. "Village Brownstone," having its principal place of business at Biltmore Fashion Plaza, Phoenix, Arizona, and the Villager, Inc. on November 1, 1968. In addition to the debtor being a different entity, the agreement granted a security interest in the equipment and inventory wherever located, and the proceeds and products thereof, together with all other items of collateral acquired by the debtor after execution of the agreement. A financing statement was filed with the Secretary of State of Arizona on April 21, 1969, wherein it provided that it covered inventory wherever located, and the proceeds and products thereof. The debtor is listed as Village Brownstone Enterprises, Biltmore Fashion Plaza, Phoenix, Arizona. Neither the security agreement nor the financing statement indicated that the debtor was a Utah corporation, and no financing statement covering this transaction was filed in Utah.

The parties to this action stipulated that The Company Enterprises transferred to plaintiff the goods, wares and merchandise situated at the premises of the Ogden store and the First South store, and The Company Enterprises had been doing business at these two stores under the assumed name of Village Brownstone. Prior to July 30, 1970, The Village Brownstone, Ltd. was a corporation engaged in the sale at retail of men's wearing apparel and furnishings, with retail stores in Salt Lake City and Ogden, Utah. The Company Enterprises, at all relevant times herein, was also a corporation engaged in the business of the retail sales of men's wearing apparel. After the merger of the four domestic corporations, the survivor, The Company Enterprises, in addition to doing business at the two retail outlets aforementioned, maintained stores at Foothill Boulevard and at 13th East in Salt Lake City and at the Biltmore Fashion Plaza in Phoenix, Arizona.

At the time the security agreements were entered, the Villager, Inc. was the sole supplier of merchandise and inventory to The Village Brownstone, Ltd. At the time of the assignment for the benefit of creditors The Company Enterprises did not have in its possession any inventory purchased from defendant by the surviving corporation or any of its constituent corporations. All such inventory had been sold prior to the date of the assignment, and no inventory was purchased from defendant at the Utah outlets within six months to one year prior to the assignment. The funds derived by plaintiff from the liquidation of inventory of The Company Enterprises was derived from the sale of inventory acquired from suppliers other than defendant.

The parties further stipulated that defendant sold merchandise for the purchase price of $38,381.87 to the outlets of The Village Brownstone, Ltd. in Utah and $16,867.20 to The Village Brownstone Enterprises in Arizona, prior and subsequent to the corporate merger. The last invoice to a Utah outlet was dated September 9, 1970, and the last invoice to the Arizona outlet was dated August 4, 1971.

The Company Enterprises sold all the inventory, furniture, fixtures, equipment and intangibles situated in the Arizona store in May, 1971. The Arizona store continued to do business with defendant, but none of the goods was purchased by The Company Enterprises. The unpaid balance for the merchandise purchased for the Arizona store as of May 31, 1971, was in the sum of $16,178.70.

Plaintiff, as an assignee for the benefit of creditors, sold furniture, fixtures, furnishings, supplies, leasehold improvements and merchandise inventory from the retail outlets in Utah. No property from the State of Arizona was included in the assignment, and plaintiff never took possession of any such property.

Based on the foregoing stipulation, the trial court concluded that defendant had a valid security interest in the inventory on hand at the time of the assignment for the benefit of creditors at the Ogden and First South outlets of The Company Enterprises. The trial court ruled that defendant's security interest attached to the cash proceeds from the sale of inventory at these two stores, but that defendant did not have a security interest in the inventory located at the other outlets of The Company Enterprises in either Utah or Arizona. Plaintiff sold the leasehold, fixtures, and inventory at the First South store for $58,688.33; plaintiff accepted $30,000 cash and a promissory note for the remainder. The value of the inventory at the store was $26,305.-75, and the trial court allocated the cash and proceeds from the note to the defendant in the same proportion as the value of the inventory bore to the total purchase price.[1] The trial court awarded defendant attorney's fee in the sum of $3,000. The trial court decreed that any purported security interest in the inventory or proceeds situated at other than the Ogden and First South outlets was null and void as against plaintiff, assignee, and that the unpaid balance of defendant's claim should be recognized by plaintiff as a claim with general creditor status to be paid on a pro ráta basis with other creditors of the same class.

On appeal, plaintiff contends that under the express terms of the security agreement defendant's security interest was limited to a "purchase money security interest in inventory" and after-acquired property of the same class; and, therefore, defendant did not have a valid security interest in inventory purchased from other suppliers.

The construction urged by plaintiff would result in the anomalous situation of relegating to an inferior position the preferred status of a purchase money security interest granted by the Uniform Commercial Code, Chapter 9, Title 70–A, U.C.A. 1953, as amended 1965.[2] In both the security agreements and the financing statements filed in Utah, the security interest of the defendant covered inventory and the proceeds.

In Holzman v. L. H. J. Enterprises, Inc.[3] the debtor gave a purchase money security interest on all the inventory of boys' clothing and any and all additions, accessions, and substitutes. At the time a petition for bankruptcy was filed, the debtor had on hand a substantial inventory of boys' clothing of which only a small portion constituted items sold by the secured party. The remainder of the inventory had been purchased by the debtor subsequent to the date of the security agreement. The trustee in bankruptcy sold the inventory, and the issue was whether the secured party's lien attached to the entire proceeds or only that portion which was derived from the inventory actually purchased by the debtor from the secured party. The court framed the issue as whether a lien on after-acquired inventory can qualify as a purchase money security interest.

---

1. The record indicates that the payments on the note are in default and the note is uncollectible.

2. See 70A–9–312(3)(4), as an example.

3. U.S.C.A. 9th, 1973, 476 F.2d 949.

The court affirmed the ruling of the district court[4] that the secured party's lien extended to after-acquired inventory and accordingly to the entire proceeds of the sale. The court explained:

If a purchase money security interest in retail inventory is to have any commercial usefulness, it must accommodate the resale of the inventory under lien. Resale of that inventory is the very reason for its purchase.

This could be accomplished by an elaborate and cumbersome arrangement whereby the resale of any item subject to lien is permitted by the lienholder, the proceeds of such resale are impounded to apply upon the note, and the lienholder then consents to use of the impounded funds for purchase of replacement items of inventory, taking a new lien on such new purchases. The floating lien on after-acquired inventory items is but a shorthand version of this arrangement. By consenting to resale of the collateral and use of the proceeds of such resale to acquire replacement items, the seller (lender) has given value to enable the purchaser (borrower) to acquire the new collateral. In effect, he has renewed his advance by releasing the proceeds of resale.

The court, therefore, held that the lien on inventory items subsequently acquired as replacement for the original items subject to lien was a purchase money security interest. The court further observed that the state requirement for giving notice of the financial arrangements served to protect future sellers of inventory as well as general creditors.

■■■ Section 70A–9–109(4), U.C.A. 1953, as amended 1965, recognizes "inventory" as a category of collateral. Inventory subject to a security interest should be looked upon as a single entity and not as a collection of individual items. The res, which is the subject of the lien, is the mer-chandise or stock in trade, conceived of as a unit, presently and continuously in existence—a floating mass, the component elements of which may be constantly changing without affecting the identity of the res.[5]

Section 70A–9–108, U.C.A.1953, as amended 1965, provides:

Where a secured party makes an advance, incurs an obligation, releases a perfected security interest, or otherwise gives new value which is to be secured in whole or in part by after-acquired property his security interest in the after-acquired collateral shall be deemed to be taken for new value and not as security for an antecedent debt if the debtor acquires his rights in such collateral either in the ordinary course of his business or under a contract of purchase made pursuant to the security agreement within a reasonable time after new value is given.

In a comprehensive analysis of the code provisions relevant to the instant action, Ray D. Henson " 'Proceeds' Under The Uniform Commercial Code" 2 U.C.C.Reptr. Serv. 566, 571–586 (Reprinted from 65 Col.L.Rev. 232, 1965), stated:

This section [9–108] provides that in our situation, where a financer has put new money into a debtor's business to finance constantly changing collateral, the security interest in the new collateral is taken for new value where the debtor's rights are acquired in the ordinary course of business, because as far as individual items of inventory are concerned the secured party's rights are lost when the items are sold. In effect, the section is simply a provision for recognizing substituted collateral. . . . But where inventory qua inventory is the collateral, the interest in the property is "deemed" to be taken for new value on the theory that the security interest in the inventory (and not in the individual

---

4. In re Piro, U.S.D.C., S.D.Calif., 331 F. Supp. 171 (1971).

5. In re Nickerson & Nickerson, Inc., U.S. D.C., D.Neb.1971, 329 F.Supp. 93.

items composing it) relates back to the time of the original attachment and perfection, when new value was given. Tracing the continuous substitutions would be difficult, if not impossible; it would also be unnecessary. . . .

The Code provides for a security interest to continue in proceeds as inventory is sold. [70A–9–306(2)] This intermediate step of "proceeds" is the factor which seems so often ignored by those who argue that as inventory is sold it must be contemporaneously replaced. Under the Code, an interest also continues in whatever is received upon the disposition of the proceeds; in this way, a continuous perfected security interest is provided—inventory, proceeds, inventory again, more proceeds, and so on. In short, to say that a debtor and secured party legally need not engage in a continuing turnover, payover arrangement to have a perfected non-attackable transaction is simply to recognize that modern facts of life do not require needless acts of no benefit to other creditors. The Code merely allows the financer and debtor to accomplish by a simple means what they could unquestionably do by a more elaborate arrangement. The recognition of substituted collateral in Section 9–108, is a result that would necessarily be reached, independently of the section, by any referee or judge. To require further tracing would be to demand a futile act. With a filed financing statement of record, no one is misled in this kind of financing.

. . . The interest in the proceeds which are substituted collateral, dates back to the original perfection of the security interest in the financed collateral. . . .

The author further explained: [6]

. . . If we understand inventory financing to be literally defined—that is,

the financing of *inventory*, whatever items may from time to time compose it —then there is no transfer after the date the original secured transaction has been perfected; . . . Perfection would have occurred when the last of four events happened: a financing statement was filed, a security agreement was duly entered into, the debtor has rights in the collateral, a value was given. After-acquired property would be deemed to be taken for new value because it was acquired in the ordinary course of business, and it would be, in fact, substitute collateral. The property simply is not "transferred" and there is no question of antecedent debt, for the value was necessarily given at the inception of the financing, the time of the transfer.

◼ The defendant had a valid security interest in the after-acquired inventory of the debtor, Village Brownstone, Ltd., in the State of Utah.[7]

Plaintiff further contends that the after-acquired property clause in the defendant's security agreement with the constituent corporation (Village Brownstone, Ltd.) does not extend to property acquired by the surviving corporation (The Company Enterprises) after merger.

◼ The security agreement expressly provided that the parties therein should include the successors or assigns of the parties. Section 70A–9–306(2) provides that a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof by the debtor unless his action was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor. Since the financing statement was properly filed, plaintiff's assignor had notice of defendant's security interest in the collateral and proceeds, as well as the pro-

---

6. At pages 585–586 of 2 U.C.C.Reptr. Service.

7. Owens v. McKesson and Robbins Drug Co., U.S.D.C., N.D.Fla.1972, 349 F.Supp. 1327; In re Fibre Glass Boat Corp., U.S. D.C., S.D.Fla.1971, 324 F.Supp. 1054; In re King-Porter, Co., Inc., U.S.C.A. 5th, 1971, 446 F.2d 722; Rosenberg v. Rudnick, U.S. D.C., D.Mass.1967, 262 F.Supp. 635.

vision in the security agreement that provided that the collateral, inventory, whenever acquired would secure the obligation covered, Section 70A–9–204(3), U.C.A. 1953, as amended 1965. Defendant's rights attached to this substitute collateral prior to the assignment.

██ Plaintiff further contends that the financing statement on file at the time of the assignment for the benefit of creditors was deficient because it did not contain the name of the debtor-assignor, The Company Enterprises. The statement on file indicated that the debtor was The Village Brownstone, Ltd. Plaintiff cites Section 70A–9–301(3) which provides that a lien creditor includes an assignee for benefit of creditors from the time of the assignment. Plaintiff further cites Section 70A–9–301(1)(b) which provides that an unperfected security interest is subordinate to the rights of a lien creditor without knowledge of the security interest and before it is perfected.

In the case of In re Pasco Sales Co., Inc.[8] the court stated:

.   .   .   Article 9 of the Code does not contain any provision, however, which alters the perfected status of a secured party because the financing statement was filed under the debtor's former name.

\*     \*     \*     \*     \*     \*

Although the purpose of the filing provisions of the Code is to afford protection to a creditor by furnishing notice to interested inquiring parties, these provisions are intended merely as "a *starting point* for investigation which will result in fair warning concerning the transaction contemplated" [Emphasis added.] [Citation] It was not intended, therefore, that interested parties be completely absolved from any inquiry as to the past history of the debtor. (See, e. g., Uniform Commercial Code, § 9–401(3).) To inquire of any change of name, especially where the filed certifi-

cate of incorporation has been amended to effect such a change, imposes no greater burden than is already contemplated under the Code.

In the Pasco case, the court held that the secured party held a perfected security interest in the proceeds of the sale of the assignor's inventory which was superior to that of the assignee as a lien creditor.

The facts in the instant case particularly emphasize the need for investigation. The survivor of the corporate merger continued to do business at two retail outlets under the name of The Village Brownstone. The assignment, itself, provides: "The Company Enterprises, doing business under the name of Village Ltd., The Company, The Village Brownstone at Salt Lake City and Ogden."

A debtor cannot destroy the perfected security interest of a secured party by merely changing its name or corporate structure, particularly when there is no evidence to indicate that the secured party had any knowledge thereof.

██ Defendant, in its cross-appeal, contends that the trial court erred by decreeing that the proceeds from the First South store to which defendant was entitled be apportioned between the cash and the promissory note received by plaintiff.

The assertion of defendant is correct. The specific terms of the assignment provided:

It is understood and agreed that the said second party [the assignee] is to convert said property into *cash* for the benefit of the creditors of the said first party [assignor] and that the proceeds are to be applied as follows:

1st. To pay the expenses incidental to the carrying out of this agreement.

2nd. To pay such claims as may be preferred by law. [Emphasis added.]

Plaintiff was not authorized to make a credit sale, and defendant as a secured party had priority to the proceeds under the

8.   77 Misc.2d 724, 354 N.Y.S.2d 402 (1974).

terms of the assignment,[9] as well as under the Uniform Commercial Code.[10]

Defendant further contends that its security interest covered the proceeds from the inventory of all the stores, and the trial court erred in limiting defendant's priority to the proceeds from inventory at two of the stores. Defendant cites Section 16–10–71(e), U.C.A.1953, as amended 1961, which provides:

> (e) Such surviving or new corporation shall thenceforth be responsible and liable for all the liabilities and obligations of each of the corporations so merged or consolidated; and any claim existing or action or proceeding pending by or against any of such corporations may be prosecuted as if such merger or consolidation had not taken place, or such surviving or new corporation may be substituted in its place. Neither the right[s] of creditors nor any liens upon the property of any such corporation shall be impaired by such merger or consolidation.

Defendant urges that since the security agreements covered "inventory wherever located" as the collateral, that upon merger all of the inventory of the surviving corporation became subject to the security interest.

■ Section 16–10–71(e), U.C.A.1953, as amended 1961, does not extend the lien upon the property of a constituent corporation to the property of the other constituents or the survivor but merely prohibits the impairment of the lien upon the property of the constituent by the merger. The statute indicates an intent that property acquired solely in connection with the business of a particular predecessor be treated as though acquired by that predecessor, and be subject to the lien of that predecessor's mortgage to the same extent as if it were continuing.[11] If the lien upon the property of the constituent corporation were extended as urged by defendant, the rights of the creditors of the other constituent corporations would be impaired as a result of the merger in violation of the express provisions of the statute.

Section 70A–9–201, U.C.A.1953, as amended 1965, provides:

> Except as otherwise provided by this act a security agreement is effective according to its terms between the parties, against purchasers of the collateral and against creditors. . . .

■ A review of the terms of the security agreement, for which a financing statement was filed in Utah, indicates that the debtor was conducting business at a particular address. The collateral was the inventory held for sale by the debtor in the daily conduct of his business. The agreement provided that the debtor would keep the collateral located at the premises. In other words, the parties agreed and identified a specific "res" the inventory and its proceeds, which were to be the collateral. The general term "inventory wherever located" if read within the context of the agreement did not expand or change the specific description but merely provided for such contingencies as a change of address or sale, exchange, or other disposition of the inventory by the debtor. Defendant has not claimed that the inventory, which constituted the collateral, was moved from its location or manipulated by the survivor corporation. The parties to the agreement, which included their successors and assigns, specifically described the inventory which was to constitute the collateral. Defendant cannot extend this description to cover collateral not within the express understanding of the parties. The trial court did not err in its determination that defendant did not have a security interest in proceeds of inventory liquidated by plaintiff at other stores not covered by the security agreement.

---

9. See Section 6–1–10, U.C.A.1953.

10. 70A–9–306(4), U.C.A.1953, as amended 1965; Section 70A–1–201(22), U.C.A.1953, as amended 1965.

11. 13 Minn.L.R. 81, 87–89, Foley and Pogue, After-Acquired Property Under Conflicting Mortgage Indentures.

Defendant further asserts that it has a priority to the proceeds held by plaintiff based on its security interest in the inventory delivered in Arizona to another one of the constituent corporations merged into The Company Enterprises. Defendant filed its financing statement in Arizona and not in Utah. Since defendant's security interest was not perfected in Utah, it is subordinate to the rights of plaintiff.[12]

The judgment of the trial court is affirmed with the sole modification that defendant was entitled to the cash proceeds from the inventory at the First South Store, without any allocation. Each party should bear its own costs.

ELLETT, CROCKETT and TUCKETT, JJ.; concur.

HENRIOD, J., concurs in the result.

12. 70A–9–301(1)(b), U.C.A.1953, as amended 1965.