**William C. OWEN, Trustee in Bankruptcy of the Estate of X–L Stores, Inc., Bankrupt, Plaintiff,**

v.

**McKESSON AND ROBBINS DRUG COMPANY, Division Foremost-McKesson, Inc., Defendant.**

Civ. A. No. 1755.

United States District Court,
N. D. Florida.

Oct. 27, 1972.

William C. Owen, Tallahassee, Fla., for plaintiff.

W. Ralph Durrance, Jr., Tallahassee, Fla., for defendant.

### OPINION–ORDER

MIDDLEBROOKS, District Judge.

This cause is before the Court upon pending motions of the parties for summary judgment. Pre-trial conference in the above entitled cause has been held and the Court has the benefit of the pre-trial stipulation made and entered into by the parties. In addition the Court has received and considered the memoranda of law submitted by the parties in support of their respective positions.

### PRELIMINARY STATEMENT OF THE ACTION

Defendant is a foreign corporation authorized and licensed to do business in the State of Florida. On February 3, 1970, defendant as secured party and bankrupt as debtor entered into a security agreement signed by debtor, which agreement was evidenced by a

promissory note executed and delivered by bankrupt to defendant. It is undisputed that defendant's security interest arising under and by virtue of said agreement was made for a fair consideration. On February 19, 1970, as a result of the above agreement and in accordance with Florida law, defendant filed in the office of the Secretary of State of the State of Florida, two financing statements describing the collateral covered by the above security agreement. Ostensibly, the agreement was intended to secure as collateral present and future inventory of the bankrupt at its two places of business in Tallahassee, Florida.

In August, 1970, bankrupt moved a portion of its inventory from one of its Tallahassee, Florida, stores to its store at Madison, Florida; at about the same time that Tallahassee, Florida, store was closed.

Between the dates of February 3, 1970, and August 4, 1970, defendant and bankrupt entered into another security agreement covering inventory at the bankrupt's Madison, Florida, store. On October 29, 1970, defendant filed with the Secretary of State a financing statement describing the collateral at the Madison, Florida, premises covered by this security agreement.

Subsequently, bankrupt defaulted on its payments of its indebtedness to defendant and on or about November 2, 1970, the parties made an agreement whereby bankrupt agreed to surrender and deliver to defendant possession of collateral encumbered by the security agreements for public sale to satisfy the existing indebtedness. On the following day bankrupt surrendered its inventory to defendant as agreed upon and on November 19, 1970, after notice to creditors, a public sale was held at which defendant purchased the inventory and prescription files of bankrupt's two businesses.

Shortly thereafter, on December 17, 1970, debtor was adjudicated a bankrupt in involuntary proceedings.

Plaintiff, as Trustee of the bankrupt's estate, filed this action to set aside the transfer and sale of inventory to defendant as constituting a preferential transfer of assets of a bankrupt in derogation of Section 60 of the Bankruptcy Act. A subsidiary argument advanced on behalf of plaintiff is that even if the security interests in the inventory located at the Tallahassee, Florida, stores are deemed "perfected" security interests in after-acquired property and do not constitute a voidable preference within the Bankruptcy Act, the later security agreement made with respect to the Madison, Florida, store does not assume the aura of a perfected security interest so as to gain the benefit of the after-acquired property protections of the Uniform Commercial Code.

### FINDINGS OF FACT

■ On February 3, 1970, a security agreement was executed between bankrupt and defendant granting claimant a security interest in all of bankrupt's inventory at its two Tallahassee, Florida, stores. The purpose of the agreement was to secure the payment of purchase money, including any existing and future indebtedness to defendants. The agreement described in detail various merchandise covered by the agreement and any after-acquired inventory.

■ Shortly thereafter, defendant and bankrupt executed financing statements as required by the Florida Uniform Commercial Code [hereinafter referred to as the Code].[1]

■ On or about this same time defendant and bankrupt executed another security agreement covering inventory at bankrupt's Madison, Florida, store. This agreement also contained an after-acquired property clause. The financing statement executed as a result of

---

1. See Florida Statutes, § 671.1–101 to 680.10–101, F.S.A., effective January 1, 1967. In this opinion reference is made to the 1966 Official Text and Comments, the relevant sections of which were adopted in Florida without modification.

this security agreement was not filed until October 29, 1970.

■ On November 3, 1970, defendant repossessed from bankrupt all merchandise and inventory in defendant's Tallahassee and Madison, Florida, stores, placed them for public sale and purchased them as the highest bidder.

■ On December 2, 1970, an involuntary petition in bankruptcy was filed in this Court against the debtor, X-L Stores, Inc.; on December 17, 1970, debtor was adjudicated a bankrupt and thereafter plaintiff was appointed Trustee to administer the estate.

■ During this course of events the above described commercial transactions were subject to and governed by the Florida Uniform Commercial Code.

## DISCUSSION

Plaintiff under the provisions of § 60b of the Bankruptcy Act, 11 U.S.C. § 96(b), seeks to void and set aside the sale and transfer of assets to defendant as constituting a voidable preference within § 60(a)(1) of the Act, 11 U.S.C. § 96(a)(1). That portion of the statute reads as follows:

"A preference is a transfer, as defined in this title, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this title, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class."

A "transfer" within the meaning of the Act is considered "to have been made or suffered at the time when it became so far perfected that no subsequent lien upon such property obtainable by legal or equitable proceedings on a simple con-

tract could become superior to the rights of the transferee". Section 60(a)(2) of the Act, 11 U.S.C. § 96(a)(2).

### I

Applying the foregoing sections to the "strongarm" provisions of Section 70 of the Act, 11 U.S.C. § 110, plaintiff seeks to set aside the transfer of goods to defendant and to reclaim them for the benefit of the bankrupt estate. In this regard it becomes crucial to determine at what time, if at all, defendant perfected its security interest in the property sought to be reclaimed by trustee.[2] This determination is crucial for two reasons. First, under the Code unless a security interest is perfected it remains subordinate to the rights of a trustee in bankruptcy. U.C.C. § 9-301(1)(b) and (3). This result obtains since § 70c of the Act gives to the trustee the status of a lien creditor as of the date of the filing of the bankruptcy petition. See also U.C.C. § 9-301(3). Secondly, the event of the perfection of a security interest under the Code is generally equated with the time at which debtor surrenders or "transfers" to his creditor rights in collateral or property and the creditor's interest "attaches" therein.

■ Section 9-303 of the Code provides that a security interest is perfected when it has "attached" and when all steps otherwise required for perfection have been taken. Section 9-204(1) of the Code provides that a security interest attaches when there is agreement that it attach, when value is given and when the debtor has rights in the collateral. In most instances the final step to achieve perfection of the security interest is filing of the financing statement evidencing the security agreement. U.C.C. § 9-302(1). In short under the Code four requisite procedures must be followed to perfect the security interest:

(a) execution of a security agreement;

---

2. There is no dispute between the parties as to the form and content of the security agreement or the enforceability vel non of the security interest created. See U.C.C. § 9-203(1)(b). The dispute concerns only the extent of the security interest in inventory and the priority to be accorded it.

(b) giving of value;

(c) debtor obtains rights in collateral;

(d) financing statement filed with secretary of state.

Until these steps are accomplished there can be no perfection of a security interest.

With these fundamental principles governing commercial transactions in mind, the Court considers Trustee's argument. Simply put it is argued that if any of the four above enumerated steps leading to perfection of the security interest occurred within the four month period preceding the filing of the bankruptcy petition, then a voidable transfer under the Act will be deemed to have occurred at that time. It is contended by Trustee that as to some of the inventory covered by the after-acquired property clause of the security agreement, debtor (bankrupt) did not obtain rights in a portion of the collateral until within the four month period preceding bankruptcy and as a consequence the defendant's security interest did not "attach" until that time when rights in collateral were transferred to defendant. In this setting, so argues Trustee, the transaction would constitute a voidable preference since there had been a transfer of property of the debtor to or for the benefit of a creditor for or on account of an antecedent debt.

Preliminarily, as to inventory contained in all stores of bankrupt encumbered by the security agreements made and entered into by bankrupt and defendant, Trustee contends that such property could not be reclaimed by defendant since such transaction wrought to the detriment of other creditors of bankrupt and would constitute a preferential transfer of assets. The type of financing arrangement made by bankrupt and defendant providing for a security interest in after-acquired property has often been challenged in proceedings brought by a Trustee in Bankruptcy and has just as often succumbed to the deadly content of the Uniform Commercial Code. See In re King-Porter, 446 F.2d 722 (5th Cir. 1971); DuBay v. Williams, 417 F.2d 1277 (9th Cir. 1969); Rosenberg v. Rudnick, 262 F. Supp. 635 (D.C.Mass.1967).

The transfer of assets here in question is not the physical transfer of possession which took place on November 3, 1970, but the parting by debtor of a security interest in the property. As previously declared the time of transfer is gauged by § 60(a)(2) of the Act; the question of when perfection has been reached is one which must be determined by state law, i. e., the Uniform Commercial Code of Florida. See Rosenberg v. Rudnick, supra, at 638.

It must be borne in mind that "perfection" under the Code and under the Act are not synonymous. In re King-Porter Co., supra, at 730. Perfection under § 60(a)(2) occurs when no subsequent lien creditor can obtain superior rights to those of another secured party or transferee having rights in the property. Perfection under the Code is governed by § 9–204 and § 9–303. Even though perfection of the security interest under the Code may not have been accomplishd because the security interest in property had yet to attach, for bankruptcy purposes § 60(a)(2) will treat the secured interest as indefeasible where it cannot be defeated by a subsequent lien creditor. Hence, if under state law there were a security agreement executed and subsequent compliance with filing requirements of state law, "perfection" will be deemed to have occurred under the Act since an intervening creditor, i. e., one who extends credit between the time of this security agreement or agreements and the four month period preceding bankruptcy, will have been put on notice of the prior lien on the property. "To this end a transfer for purposes of § 60(a)(2) is equated with the Act by which priority over later creditors is achieved and not with the event which attaches or perfects the security interest in a specific item of property." *Ibid.* In sum, perfection under state law need not be full perfection

but only perfection so far as is necessary to meet the test of § 60(a)(2).

■ In this regard while Florida law may not regard a security interest in after-acquired inventory as fully perfected until it attaches to items as they are acquired by the debtor, nevertheless § 9–204(3) recognizes that a viable lien in such property can be created by a security agreement. Such a lien, after compliance with the filing provisions of the Code, would under the circumstances here present, be superior to a subsequently acquired lien of some other creditor. In the case *sub judice*, the security interest as to inventory located at the Tallahassee, Florida, stores was created by the execution of the security agreement on February 3, 1970, and the subsequent compliance with the filing provisions of Florida law on February 19, 1970. As of that date the security interest met the requirements of § 60(a)(2) and the transfer must be deemed as having occurred on that date.

Logically, Trustee argues that as to inventory acquired by debtor after August 1970, the security interest of defendant could not attach until that time, at which time the lien would be perfected; consequently, a transfer would occur within the four month period preceding bankruptcy and Trustee as an ideal lien creditor could step in and avoid this transfer of rights from debtor to defendant.

■ Although persuasive, this argument overlooks the floating lien arrangement of financing recognized under Florida law. Under the floating lien concept after-acquired property may be encumbered so long as the security agreement provides therefor. The inventory covered by the security agreement is considered as a mass everchanging in form and in its component elements. Once the necessary steps are taken for perfection of the security interest, the lien or security interest floats over and along with this mass as it changes form, and as the debtor receives an interest in after-acquired goods the

floating lien descends on these goods and attaches at that point; but for "perfection" purposes under state law the lien on these after-acquired goods arose on February 19, 1970 at the time the financing statement was filed. See § 9–303(1); § 9–204(1). Therefore, under Florida law, there is no hiatus in events from the time of filing of the financing statement until perfection occurs for an intervening creditor to acquire a superior lien to that of defendant; and since under § 70(c) the Trustee in Bankruptcy can assume no better position that that of a hypothetical lien creditor, the lien of defendant under § 60(a)(2) standards must be deemed as arising on February 19, 1970. *A fortiori*, the transfer was made on that date which was well in advance of the four month period preceding the filing of the bankruptcy petition on December 2, 1970. In sum, since the transfer was perfected within the terms of the Act from the time of filing of the financing statement, and since filing occurred outside the critical four month period, there was no preferential transfer subject to avoidance.

## II

■■ Even if it were assumed that a transfer occurred within the four month period preceding bankruptcy[3], it is necessary for Trustee to prove that the transfer was made for or on account of an antecedent debt. In this regard one must again refer to state law to make this determination. See e. g. Rosenberg v. Rudnick, supra, at 639. While it is generally thought that transfers not made for present consideration are generally classified as having been made on account of an antecedent debt, § 9–108 of the Code provides as follows:

"Where a secured party makes an advance, incurs an obligation, releases a perfected security interest, or otherwise gives new value which is to be secured in whole or in part by after-acquired property his security interest in the after-acquired collateral shall be

3. That is, the Court adopts arguendo, Trustee's contention that no transfer

would take place until each specific item of inventory was acquired by debtor.

deemed to be taken for new value and not as security for an antecedent debt if the debtor acquires his rights in such collateral either in the ordinary course of his business or under a contract or purchase made pursuant to the security agreement within a reasonable time after new value is given." [4]

At this juncture the conflict between the Code provisions and those of the Bankruptcy Act become readily apparent. See e. g. DuBay v. Williams, supra, at 1289, n. 15. Be that as it may, the Court has previously found that in February, 1970, a security agreement was made at which time in consideration thereof value was given and the security interest arising therefrom was perfected by filing. Thus in keeping with the line of substantial recent authority, § 9–108 would apply in the instant case to insulate the security interest of defendant from the engulfing appendages of § 60(a) (1) of the Bankruptcy Act and the avoiding powers of the Trustee given him by § 70 and § 60(b) of the Act. See In re King-Porter Co., supra; DuBay v. Williams, supra; Rosenberg v. Rudnick, supra. The conclusion must be that in the transactions herein involved, value or consideration passed contemporaneously with the creation of the debt secured by the agreement of the parties which agreement contemplated securing after-acquired property.

### III

A subsidiary argument to plaintiff's primary contentions relates to defendant's security interest in inventory located at bankrupt's Madison, Florida, store. Relative to this argument, Trustee contends that unlike the security interest that attached to inventory at the Tallahassee, Florida, stores and was perfected dehors the four month period preceding filing of the bankruptcy petition, the financing statement evidencing the Madison, Florida, store security

agreement was not filed until October 29, 1970, so that under no theory could the transfer be deemed to have occurred at any other time except within the critical four month period.

The answer to this argument is somewhat clouded by the fact that all or a part of the Madison, Florida, inventory was transferred from one of bankrupt's Tallahassee, Florida, stores which inventory was encumbered as early as February 19, 1970.

Trustee contends that the security agreement and perfected security interest in collateral at the Tallahassee, Florida, stores could not carry over to effect a security interest in inventory at the Madison, Florida, store so as to insulate transactions involving that inventory from the clutches of § 60(a) of the Act. In essence, Trustee contends that the extent of defendant's security interest as to this inventory was restricted by the geographical location of the collateral described in the financing statements. It is also pointed out by Trustee that inventory of bankrupt located at its Madison store was not reasonably identified as collateral under the original security agreement or the financing statements pertaining thereto. Thus, it is argued that there was no manifestation either in the security agreement of February 3, 1970, or the related financing statements, that property of the debtor, other than collateral located at the specifically enumerated Tallahassee stores, was designed to be brought under the defendant's perfected security interest.

Although Trustee contends that to allow the inventory at the Madison, Florida, store to retain the status of secured collateral would be to frustrate the intent of the Code and to abuse the concept of notice filing contained therein, this Court reaches a contrary conclusion.

In a recent case [5], the issue before the Court was whether the failure of the

---

4. There is no dispute that the property in question was acquired by bankrupt in the ordinary course of business.

5. In Re Little Brick Shirthouse, Inc., 347 F.Supp. 827 (N.D.Ill.1972).

lender to file a new financing statement reflecting the address of the bankrupt's subsequent additional store resulted in an unperfected lien on the inventory at that store. The Court answered in the negative and found that the address of the debtor and the location of the collateral described therein were not intended to restrict the extent of the security interest. The address of debtor and location of collateral contained in the financing statement were intended merely to put other creditors on notice that a lien existed in all or a portion of that debtor's inventory. The Court reasoned that by virtue of the security agreement's after-acquired property clause and the broad description of collateral, i. e., inventory, inventory in all stores was covered by the lien.

 Under somewhat different circumstances here present this Court is disposed toward a similar result. The underpinnings of this Court's conclusion rest upon the Code's intent to adhere to "notice filing" where transient goods such as inventory are encumbered. The purpose of the financing statement is to put third parties on notice that a security interest may exist in certain inventory and that the third party may contact debtor or the secured party to learn the extent of the security interest. See § 9–402(1) and Comment 2 thereto which declares in part: "The notice itself indicates merely that the secured party who has filed *may* have a security interest in the collateral described." The acceptability of this conclusion is buttressed by § 9–401(3) which provides that a security interest in goods will continue effective after an initial proper filing has been made even though debtor's residence or place of business or location of collateral or its use, whichever controlled the original filing, is later changed. This section has particular application here since trustee argues that the location of the collateral controlled

the original filing. Obviously the legislative intent behind the adoption of this statutory enactment was to provide for state-wide filing without the necessity of the secured party having to police the collateral as it moved from county to county or in the ordinary course of debtor's business. Especially would this be true where the secured party, as an inventory financer, has retained a purchase money security interest in inventory under § 9–107(a).[6] Additionally, the Court is not unmindful that Florida rejected the alternative provision to § 9–401(3) which provided for refiling of moved collateral within four months of its change of location. Undoubtedly it was felt that this alternative filing provision was too cumbersome and would unduly burden the creditor, which procedure would be inconsistent with the Code's intent to preserve the flexibility of commercial transactions. The legislative intent in promulgating this innovative legislation was to enable lenders to provide financing for businesses with a minimum of legal effort and in a simple fashion without burdensome filing requirements.

Aware of these considerations, the Court is impelled to find that in light of commercial reasonableness a creditor would not enter into a security agreement having inventory as collateral therefor and contemplate that that particular body of inventory alone would constitute the extent of its security interest; rather, it should be contemplated that from day to day the collateral would be moving, changing and being replaced by newly acquired goods and thus the extent of the security interest in debtor's inventory would be subject to alteration. See e. g. In re Fibre Glass Boat Corp., 324 F.Supp. 1054 (S.D.Fla.1971) aff'd 448 F.2d 781 (5th Cir. 1971); In re Nickerson and Nickerson, Inc., 329 F. Supp. 93, 96 (D.C.Neb.1971), aff'd 452 F.2d 56 (8th Cir. 1971). In this regard a

---

6. There appears to be little doubt that defendant held a purchase money security interest in property located at debtor's stores. See e. g. In Re Ingram v. Ozark Production Credit Assc., 468 F.2d 564, 5th Cir. 1972 [1972].

prudent third party creditor already alerted to reasonable commercial practices as contemplated under § 9–401(3) should have sufficient notice of this defendant's security interest so that its perfected status would remain intact without the necessity of refiling. Furthermore, § 9–208 would provide a method whereby an interested third party creditor could ascertain the extent of defendant's security interest and the nature and location of assets encumbered by the security agreement. See also Comment 2, § 9–208. Thus, to require refiling of an additional statement by defendant would have been a tautologous gesture under the Code since defendant's security interest in the inventory removed to and located at the Madison, Florida, store remained undisturbed.

In view of the foregoing, defendant's security interest as to inventory located at the Madison, Florida, store remained indefeasible by an intervening, hypothetical lien creditor and under § 60(a) (2) of the Act was sufficiently perfected. Relating this conclusion to the Court's earlier discussion in Part I of this opinion, the Court concludes that a transfer was made on the date the security agreement was filed, viz., February 19, 1970, which date was well in advance of the four month period preceding filing of the bankruptcy petition; therefore, there was no preferential transfer subject to avoidance as regards inventory at the Madison, Florida, store.

### CONCLUSIONS OF LAW

This Court has jurisdiction over the subject matter of and the parties to this action.

The Court finds that defendant possessed validly perfected security interests in property located at debtor's places of business.

The Court finds that defendant's security interests in the after-acquired inventory of bankrupt was not a preferential transfer suffered or made on account of an antecedent debt.