MANSON STATE BANK, Appellant,

v.

Irving E. DIAMOND et al., Appellees.

No. 56646.

Supreme Court of Iowa.

March 19, 1975.

John H. Neiman, Neiman, Neiman, Stone & Spellman, Des Moines, for appellant.

Herbert R. Bennett, McCarville, Bennett, Beisser & Ferguson, Fort Dodge, for appellees.

Heard before MOORE, C. J., and MASON, REES, UHLENHOPP and REYNOLDSON, JJ.

MASON, Justice.

Manson State Bank, a banking corporation organized and existing under the laws of Iowa, instituted this law action seeking damages from Irving E. Diamond, Clarence T. V. Johnson and Loren A. Decker on the theory these individuals had converted personal property in which Manson State Bank claimed a security interest. Trial to the court resulted in dismissal of the petition at plaintiff's cost. It appeals.

The property involved in the dispute had been originally sold out of inventory of Continental Corporation to R. E. Iceberg, Incorporated, a customer in Michigan who subsequently rejected a portion of the property and returned it to Continental Corporation without paying for the goods. Shortly after return of the property in September 1970 defendants took possession thereof and later sold it turning the proceeds of the sale over to the Union Trust & Savings Bank, a Fort Dodge bank having a security interest in the property.

Continental Corporation was organized in 1967. Located at Manson, Iowa, its general business was the manufacturing and selling of equipment used in golfing. In 1969 the incorporators of Continental Corporation purchased a majority of the stock in Imperial Golf Company, a concern which manufactured and sold golf clubs. In January 1970 a new corporation called Continental, Inc. was organized. All of the stock of Continental Corporation and Imperial Golf Company was purchased by Continental, Inc. and that corporation became the sole shareholder in both companies. Continental, Inc. was a holding company, the other two were operating companies. Continental Corporation and Imperial Golf Company had the same board of directors as Continental, Inc. but had different officers. Johnson and Diamond were stockholders and directors of Continental, Inc. and Decker was a stockholder. Diamond was president of this corporation.

Some reference to the transactions which eventually led to this litigation could be helpful for an understanding of the problems presented by this appeal.

(1) November 29, 1967, Continental *Corporation* and plaintiff Manson State Bank executed a security agreement on inventory including "all goods, merchandise, raw materials, goods in process, finished goods and other tangible personal property now owned or hereafter acquired."

(2) December 4, 1967, Continental *Corporation* and plaintiff Bank executed a second security agreement on all accounts receivable then owned and thereafter acquired ("all of borrower's accounts, contract rights, notes, drafts, acceptances, instruments, and chattel paper") and "all the proceeds and products thereof, and in and to all returned or repossessed goods * * * to secure payment of an indebtedness and liabilities whatsoever of the borrower to bank, whether direct or indirect * * *."

(3) December 21, 1967, financing statements were filed with the Iowa Secretary of State covering "all machinery, equipment, attachments, parts and replacements, now owned or hereafter acquired. All golf bags, carts, material and supplies. Accounts receivable."

(4) February 21, 1969, a financing statement was filed by Park Investment Company of Des Moines which represented an earlier subordination of plaintiff Bank's rights in the accounts receivable to Park. The transcript indicates all loans made by plaintiff *on accounts receivable* have been repaid.

(5) January 1970, a new corporation, Continental *Incorporated,* was formed which purchased all stock of Imperial and Continental Corporation.

(6) March 9, 1970, Union Trust & Savings Bank agreed with Continental Incorporated to finance all accounts receivable then owned and thereafter acquired by Continental Incorporated's two divisions on the basis of 80 percent of the invoice. Union Trust then paid Park $46,000 and received from Park all accounts receivable pledged to it.

(7) March 24, 1970, Continental Incorporated sent certain merchandise to R. E. Iceberg, Incorporated, of Detroit, Michigan, amounting to $9838.00. Union Trust financed this amount to the extent of 80 percent. The funds advanced on these goods were paid to plaintiff before the goods were allowed out of the warehouse. Iceberg later rejected these goods and upon request returned them. The balance due on the invoice was $7140.00. The disposition of this returned merchandise is the subject matter of the suit.

(8) July 2, 1970, Union Trust & Savings Bank filed with the Secretary of State a financing statement listing Continental Incorporated as debtor. November 10, 1970, a second financing statement listing Continental *Corporation* as debtor was filed. There was no form filled out requesting the identity of other lien holders, however.

It appears from the transcript that on the evening of September 24, 1970, defendants Johnson, Diamond and Decker, among others, met at the Continental warehouse and loaded these goods on a semitrailer truck owned by Decker.

E. W. Youell, president of plaintiff Bank, appeared on the scene with his attorney protesting the removal of the articles. It is disputed whether or not he finally agreed to their removal. The goods were retained for several months and later sold for somewhat over $3400, the proceeds being applied to the indebtedness owed Union Trust.

Unfortunately, Continental, Inc. was declared bankrupt in April 1971 and its property was sold for $200,000.00. The total proceeds were applied to the corporation's debt to plaintiff Bank. One of the areas of dispute is the method in which Youell applied this money to various debts owed to the Bank. A total of $116,000 was paid to Central National Bank and Trust of Des Moines, which was plaintiff's correspondent bank for the "overline." In addition, almost $16,000 was paid to Youell himself for monies he *personally loaned* to Dr. Wilson and Mr. Habbena to purchase additional stock issued by Continental, Inc. Defendants contend the total amount owed to plaintiff by Continental Corporation at the time of bankruptcy was $54,003.40. If the money received from the property sale had been applied to this indebtedness, defendants assert, all liability from Continental Corporation would have been discharged.

In stating the facts upon which it relied for recovery plaintiff alleged in its petition, in addition to certain preliminary matters bearing upon the status of plaintiff as a banking corporation and residence of the parties, it had loaned Continental Corporation both directly and indirectly various sums of money between December 1967 and August 1970 which totaled $287,000 by August and took a promissory note signed by Continental Corporation and the various individuals involved as evidence of such indebtedness. Plaintiff further alleged execution of the November 29 and December 4, 1967, security agreements previously referred to and execution of the financing statement filed with the Secretary of State December 21. Plaintiff also alleged defendants wrongfully and unlawfully hauled away and appropriated to their own use

inventory of Continental Corporation of a value of $6730.28 and demanded judgment against defendants for such amount with interest and cost.

Defendants in answer after admitting plaintiff was a banking corporation, they were residents of Webster County and Continental Corporation had been adjudged a bankrupt denied all other allegations of the petition. They alleged as an affirmative defense an express and implied waiver by plaintiff of any rights plaintiff claimed to have had in the merchandise involved or the proceeds from the sale thereof. Defendants further alleged as an affirmative defense plaintiff was estopped from recovering from defendants and denied conversion of the property.

The trial court made extensive findings of fact from which it concluded, inter alia: (1) plaintiff had been repaid on its accounts receivable financing and gave no value under its security agreement covering the accounts receivable from February 1969 through the date of trial; (2) plaintiff gave no value for the account receivable designated as the Iceberg account; (3) the Union Trust & Savings Bank purchased a chattel paper, gave new value and took possession of it in the ordinary course of business without knowledge the specific chattel was subject to a security interest; (4) Union Trust & Savings Bank had priority over a security interest in a chattel paper; (5) the facts shown by the evidence indisputably established that the property taken by defendants was not property of plaintiff and there was no unlawful taking by defendants; and (6) plaintiff had failed to establish identity of the property claimed.

The court further concluded defendants had sustained the burden of proving their affirmative defense plaintiff was estopped from asserting its action against them for recovery.

The court also concluded defendants had established their affirmative defense plaintiff had waived any rights it could possibly have under its security agreement and had acquiesced in the action of defendants in obtaining accounts receivable financing with Union Trust & Savings Bank.

Plaintiff's appeal presents the following questions for review: (1) Did plaintiff Bank have a valid perfected security interest in the returned goods by reason of its security interest in accounts receivable?; (2) Did Union Trust have a security interest in the returned goods (and if so, which security interest prevails)?; (3) Did defendants convert plaintiff's property?; and (4) Is plaintiff estopped from asserting its prior security interest?

These issues will be considered other than in the order argued by the parties.

On appeal from a law action tried to the court, as here, review in this court is only on errors assigned and the matter is not triable de novo. Under this limited extent of review the findings of fact by the trial court have the effect of a special verdict and are equivalent to a jury verdict. If supported by substantial evidence and justified as a matter of law, they are binding on us and the judgment will not be disturbed on appeal.

Further, we must construe the evidence in the light most favorable to the trial court's judgment, and this court will not weigh the evidence or pass on the credibility of the witnesses.

However, the rule does not preclude inquiry into the question whether, conceding the truth of a finding of fact, a conclusion of law drawn therefrom is correct, nor does it apply if in arriving at a finding the trial court erred in its ruling on evidence or in other respects upon questions of law which materially affect that decision. Luddington v. Moore, 261 Iowa 641, 645–646, 155 N.W.2d 428, 431–432; Mullenger v. Clause, 178 N.W.2d 420, 426 (Iowa 1970).

I. We will discuss first whether equitable estoppel or estoppel *in pais* will bar plaintiff from asserting its security interest in the disputed goods.

■ Law and equity have concurrent jurisdiction of the affirmative defense of estoppel. The defense rests on equitable principles which courts of law recognize. The defense may be urged in either forum. Grandon v. Ellingson, 259 Iowa 514, 518, 144 N.W.2d 898, 901 and authorities cited.

It is claimed that in March 1970 defendants Diamond and Wilson with others discussed the financing of accounts receivable with E. W. Youell, president of Manson State Bank. Youell informed them that while plaintiff had financed accounts receivable on earlier occasions, it had subordinated its rights to Park Investment due to the fact rates were insufficient to pay plaintiff to continue such financing and suggested Union Trust be contacted about such financing. Upon being questioned, Youell stated plaintiff had a security interest in the furniture, fixtures, equipment and inventory of Continental Corporation, but did not inform them of any security interest in accounts receivable held by plaintiff.

Defendants contend this is a misrepresentation which estops plaintiff from relying on any security interest in accounts receivable, since it was relied upon when accounts receivable financing was arranged with Union Trust.

It is further contended that while at the scene of the loading of the goods onto a truck, Youell acquiesced to the taking of the goods, but this is under some dispute.

Defendants point out Youell was aware of Union Trust's financing of accounts receivable but said nothing about it except once when plaintiff received a check on which payment was stopped. Youell apparently threatened Union Trust with the security interest held by plaintiff.

At the outset, it should be pointed out plaintiff's financing statement on the accounts receivable was on file with the Iowa Secretary of State at the time Union Trust agreed to finance these accounts. And, the Uniform Commercial Code (UCC) provides:

" * * * 2. Upon request of any person, the filing officer shall issue his certificate showing whether there is on file on the date and hour stated therein, any presently effective financing statement naming a particular debtor and any statement of assignment thereof and if there is, giving the date and hour of filing of each such statement and the names and addresses of each secured party therein. * * *." Section 554.9407, The Code, 1971.

■ Such filing provides notice to all. " * * * [W]hen the holder of a security interest properly perfects the same, subsequent purchasers and encumbrancers are charged with 'notice' of such perfected security interest." National Trail Con. Co. v. Mount Vernon Nat. B. & T. Co., 420 P.2d 889, 893 (Okl.1966).

"A security interest in receivables is 'perfected' in the Code sense (Sections 9–204, 9–303) at the time the last of four steps has been taken (in any order) *with respect to the particular receivable or receivables in question:*

"(1) there is 'agreement' (which could be oral) between the parties that a security interest is attached to;

"(2) the secured party gives value;

"(3) the parties file a financing statement * * *;

"(4) the assignor 'acquires rights' in the particular receivables, which cannot happen as to a particular receivable until that receivable comes into existence (Section 9–204)." (Emphasis in the original). 2 Bender's Uniform Commercial Code Service, Secured Transactions, section 15.08(2), p. 1600.

Bramble Transportation, Inc. v. Sam Senter Sales, Inc., 294 A.2d 97, 103, (Del.Super. 1971), aff'd., 294 A.2d 104 (Del.1972) has this statement:

" * * * The purpose of a financing statement is to put a searcher on notice that an underlying security agreement may be outstanding. A properly filed financing statement would thus serve its intended

purpose if a subsequent party would have been put on notice of an outstanding security agreement. * * * [citing authorities]." See also South County Sand & G. Co. v. Bituminous Pavers Co., 106 R.I. 178, 256 A.2d 514, 516–517; Mid-Eastern Electronics, Inc. v. First Nat. Bank of So. Md., 455 F.2d 141, 146 (4 Cir. 1970); In re Colorado Mercantile Co., 299 F.Supp. 55, 58–59 (D.C.Colo.1969); In re Grandmont, 310 F.Supp. 968, 971 (D.C.Conn.1970); Owen v. McKesson and Robbins Drug Company, 349 F.Supp. 1327, 1334 (N.D.Fla.1972). The foregoing principle is recognized in Kaiser Aluminum & Chemical Sales, Inc. v. Hurst, 176 N.W.2d 166, 167–168 (Iowa 1970).

■ The filing herein thus provided notice. Based on this fact and on the foregoing decisions or decisions stating similar principles in somewhat different language plaintiff contended it is entitled to priority by virtue of having filed its financing statement before the defendants or Union Trust & Savings Bank filed any financing statement.

However, the present problem requires a determination whether Youell's statements or nonstatements will prevent plaintiff from asserting its security interest is entitled to priority.

" 'The essential elements of equitable estoppel or estoppel *in pais* are:

" '(1) a false representation or concealment of material facts; (2) lack of knowledge of true facts on part of actor; (3) intention that it be acted upon; and (4) reliance thereon by the party to whom made, to his prejudice and injury.' " Walters v. Walters, 203 N.W.2d 376, 379 (Iowa 1973), quoted in DeWall v. Prentice, 224 N.W.2d 428, 430 (Iowa 1974).

" ' * * * A party asserting this defense has the burden to establish all essential elements thereof by clear, convincing and satisfactory proof. Nothing less will suffice. * * * [citing authorities].' " DeWall v. Prentice, 224 N.W.2d at 430–431.

"In general, the doctrine of equitable estoppel is based upon the grounds of public policy, fair dealing, good faith, and justice, and its purpose is to forbid one to speak against his own act, representations, or commitments, to the injury of one to whom they were directed and who reasonably relied thereon. Such a doctrine is neither odious nor in disfavor, in either law or equity." Smith v. Coutant, 232 Iowa 887, 891, 6 N.W.2d 421, 424. See also Holsteen v. Thompson, 169 N.W.2d 554, 558 (Iowa 1969) and Mizer v. State Automobile & Casualty Underwriters, 195 N.W.2d 367, 371 (Iowa 1972).

"In considering the application of this doctrine each case must be considered in the light of its surrounding facts and circumstances; estoppel must in the nature of things stand on its merits. * * * [citing authorities]." Sioux City v. Johnson, 165 N.W.2d 762, 768 (Iowa 1969).

*A. False representation or concealment.* As stated, Mr. Youell failed to advise defendants of plaintiff's security interest in the accounts receivable when he listed the encumbrances held by plaintiff. He did, however, refer to the subordination to Park Investment.

■ At the outset, it is not necessary Youell *intended to defraud* anyone. " * * * A fraudulent intention is not essential. It is enough if a fraudulent effect would follow, allowing a party to set up a claim inconsistent with its former declarations or conduct. * * * [citing authorities]." Dart v. Thompson, 261 Iowa 237, 243–244, 154 N.W.2d 82, 86.

■ The false representation essential to the defense of equitable estoppel "arises where a person, by his acts, representations, or admissions, or even by his silence when it is his duty to speak, intentionally or through culpable negligence induces another to believe that certain facts exist, and the other person rightfully relies and acts on such belief, and will be prejudiced if the former is permitted to deny the existence of such facts." Sanborn v. Maryland Casualty

Co., 255 Iowa 1319, 1327, 125 N.W.2d 758, 763; Laverty v. Hawkeye Security Ins. Co., 258 Iowa 717, 726, 140 N.W.2d 83, 88.

As stated, there is evidence that in the March 1970 conversation between Youell, Diamond, Wilson and others interested regarding the extent of encumbrances held by plaintiff against Continental Corporation Youell told these parties the Bank had a security interest in the furniture, fixtures, equipment and inventory of Continental; that on an earlier occasion the Bank had financed accounts receivable for this corporation but subordinated its rights to Park Investment due to the fact plaintiff could not get a rate sufficient to pay it to continue such financing. Youell also suggested in the course of this conversation that the parties contact Union Trust & Savings about financing the accounts receivable but remained completely silent about any claim of plaintiff to a security interest in the accounts receivable which it now asserts as a basis for recovery.

It is our view the foregoing evidence would justify the trier of fact in finding Youell had a duty to inform Diamond and his associates when they inquired as to the extent of the encumbrances held by the Bank that it claimed a security interest in the accounts receivable; that Youell's silence in the face of this duty induced Diamond and the others to believe plaintiff did not have a security interest in these accounts.

Thus, there is substantial evidence to support a finding defendants had established the first essential element of equitable estoppel.

*B. Lack of knowledge of the true facts on the part of the actor.*

Plaintiff contends the fact it had filed a financing statement concerning the particular accounts receivable is conclusive in determining whether defendants had established a false representation or concealment of acts, made to one without knowledge of the real facts. This contention must be considered in light of section 554.9407, The Code, which affords a method for ascertaining whether any presently effective financing statement is on file.

In this connection this court has said:

"One may not omit to avail himself of readily accessible sources of information concerning particular facts, and thereafter plead as an estoppel the silence of another who has been guilty of no act calculated to induce the party claiming ignorance to refrain from investigating.

" * * *

"A person whose own conduct or default got him into his predicament cannot successfully urge estoppel. * * * [citing authorities]." DeWall v. Prentice, 224 N.W.2d at 431.

However, it cannot be successfully maintained in this matter that defendants failed to avail themselves of readily accessible sources of information by failing to ascertain whether plaintiff had filed a financing statement concerning the accounts receivable of Continental Corporation.

It has been stated that the purpose of the financing statement is to put third parties on notice that a security interest may exist in certain property, in this case accounts receivable, and that the third party may contact the debtor or the secured party to learn the extent of the secured interest. See Owen v. McKesson and Robbins Drug Company, 349 F.Supp. at 1334 and Bramble Transportation, Inc. v. Sam Senter Sales, Inc., 294 A.2d at 103.

A request by defendants pursuant to section 554.9407 for a certificate of the filing officer would have notified defendants plaintiff had a presently effective financing statement on file. However, in order to learn the extent of the secured interest defendants would still be required to contact the secured party. Defendants did in fact contact Youell, president of the holder of the security interest, in an effort to learn the extent of the encumbrances held by the Bank against Continental Corporation. We

have said there is evidence which would support a finding Youell concealed the fact the Bank had any security interest whatsoever in the accounts receivable and under this record a finding would be justified that Youell had a duty to inform defendants that it claimed a security interest in the accounts receivable.

Plaintiff's argument is not persuasive. A somewhat similar contention was rejected in First National Bank in Lenox v. Brown, 181 N.W.2d 178 (Iowa 1970).

In that case plaintiff bank, through its president (Zabel), loaned money to defendants for the purchase of a service station but failed to mention the bank held a prior security interest in the station adverse to defendants' interests. The court reasoned "the fact that Zabel made the loan knowing the use to which it would be put, and existence of the bank's involvement, amounted to an affirmative representation by Zabel he knew of nothing regarding the * * * [gas station seller's] businesses adverse to their interests. * * * [citing authorities]. This being the case, and * * * [defendants] having acted as plaintiff must have anticipated, it is presumed they were misled by Zabel's representations. * * * [citing authority]." 181 N.W.2d at 182–183.

The court also discussed the effect of the recordation of the bank's prior security interest.

"Admittedly one having knowledge of the true facts cannot have relief for fraud or misrepresentation. See 37 Am.Jur.2d, Fraud and Deceit, § 226. And for most purposes the public recordation of an encumbrance constitutes constructive notice of its existence. * * * [citing authority].

"Here, however, the bank, by agreeing to make the loan without mention of its liens, knowing the purpose for which the funds were sought, and being then aware of existing encumbrances held by it on the property being purchased, inferentially induced defendants to forego making the investigation necessary to acquire knowledge of the true facts.

"In this regard it is generally understood, if a deceived party relies upon fraudulent misrepresentations of another his claim of fraud is not barred merely because he has not used due diligence to discover the true facts, even though they may be readily ascertained from public records. * * * [citing authorities].

"Furthermore, where, as in this case, the bank held encumbrances on * * * [the seller's] property, the * * * [defendants] as recipients of business transaction misrepresentations, were justified in relying thereon even though an investigation might have revealed the falsity of such representations. * * * [citing authorities].

"This is especially true where the facts misrepresented are peculiarly within the knowledge of the one against whom the allegation of fraud is directed. * * * [citing authority].

"It therefore follows, a mere recordation of the bank-held encumbrances cannot be said to have given defendants such knowledge of existence thereof as to vitiate any liability for fraud on plaintiff's part." 181 N.W.2d at 183–184.

■ Youell represented to defendants the extent of the Bank's security interests, omitting mention of the accounts receivable security interest. His silence under the circumstances shown qualified as a misrepresentation. First National Bank in Lenox v. Brown, 181 N.W.2d at 182. This evidence would justify a finding Youell's failure to disclose existence of the Bank's security interest in the accounts receivable of Continental Corporation induced defendants to forego making any investigation to discover the true facts which, here, were "peculiarly within the knowledge" of plaintiff.

■ Hence, there is substantial evidence to support the trial court's finding upon which it based the conclusion plaintiff was estopped from asserting defendants' lack of

knowledge of the true facts was due to their failure to avail themselves of readily accessible sources of information concerning plaintiff's security interest in the accounts receivable.

Plaintiff's argument urged in support of this contention is without merit.

*C. Intention the representation be acted upon.*

 It is clear the actor " * * * must knowingly take a position with intention it be acted upon * * *." DeWall v. Prentice, 224 N.W.2d at 431 and authorities cited.

 As indicated, there is evidence to support a finding Youell's silence under the circumstances induced defendants to seek financing on accounts receivable from Union Trust & Savings.

Significant to this element is Youell's recommendation to approach Union Trust on the matter of accounts receivable financing. The Bank was thus enabled to benefit from outside financing in that such financing would help the corporation to stay in business for a longer period, thus making repayment to the Bank of previous loans more likely. Youell's representations were made during a general discussion concerning receivables financing, and he should reasonably have expected them to be relied upon.

Existence of the third element of the doctrine was warranted under this record.

*D. Reliance by the party to whom made.*

 Defendants must have relied upon Youell's statements to their prejudice and injury. Here, the omission induced the outside financing of accounts receivable. When the Iceberg account was not paid, defendants took possession of the returned goods. They were then sued for conversion based upon a security interest they were led to believe did not exist.

When defendants Johnson and Diamond were successful in securing accounts receivable financing from the Union Trust & Savings they were required to personally guarantee the financing the corporation received. Had these defendants known of plaintiff's security interest in the first place it is doubtful if they would have been willing to guarantee the financing furnished by Union Trust & Savings. If plaintiff's security interest in the accounts receivable were given priority over the security interest of Union Trust & Savings it would not require much imagination to conclude defendants had been prejudiced and injured financially. It is also doubtful Union Trust would have loaned Continental, Inc. money without some assurance on the part of plaintiff as to the priorities involved in the receivable financing.

The trial court was correct in holding plaintiff was estopped from asserting its action against defendants for recovery and in dismissing plaintiff's petition.

In view of the court's determination of this issue, the other issues presented for review will not be reached.

The case is therefore

Affirmed.