AFFILIATED FOODS, INC.,
Plaintiff–Appellee,

v.

Roger McGINLEY, d/b/a McGinley AF Super # 809, Defendant–Appellee.

FARMERS AND MERCHANTS STATE BANK, Intervenor–Appellee,

Gold Buffet Franchises, Inc., Intervenor–Appellant,

v.

Roger B. McGINLEY, Leah Renee McGinley, and Affiliated Foods, Inc., Defendants–Appellees to Petition of Intervention.

No. 86–1859.

Court of Appeals of Iowa.

May 31, 1988.

Ronald L. Sutphin of Ahlers, Cooney, Dorweiller, Haynie, Smith & Allbee, Des Moines, for intervenor-appellant.

Jim Turner, St. Joseph, Missouri, and John Sandre of Scalise, Scism, Sandre & Uhl, Des Moines, for plaintiff-appellee Affiliated Foods, Inc.

Heard by SCHLEGEL, P.J., and HAYDEN and SACKETT, JJ.

SCHLEGEL, Presiding Judge.

The intervenor-appellant, Gold Buffet Franchises, Inc. (Gold Buffet), appeals a district court ruling assigning it a third priority position behind the plaintiff-appellee, Affiliated Foods, Inc. (Affiliated Foods), and Farmers and Merchants State Bank (Bank) in the proceeds of grocery inventory now held by a receiver for a bankrupt grocery store. Gold Buffet contends that: (1) Affiliated Foods should be equitably estopped from asserting its prior perfected security interest over the Bank and Gold Buffet; (2) Affiliated Foods impliedly agreed, through its actions, to subordinate its security interest to the Bank and Gold Buffet; (3) Affiliated Foods perfected its security interest over only one-half of the inventory; and (4) Affiliated Foods cannot foreclose its lien without first establishing its authority to do business in Iowa. We reverse.

Gold Buffet, operators of a grocery store in Winterset, Iowa, became concerned about the manager of the store and sought a new manager and part owner to run the store. Affiliated Foods, a grocery store food supplier, recommended Roger McGinley for the position. Negotiations ensued for the sale of part of the store and its grocery inventory. The participants at many of the meetings included Bud Deppler, a representative of Affiliated Foods, Carroll Meyer, president of Gold Buffet, and Roger McGinley. The evidence indicates that Deppler took an active role in the negotiations. A purchase agreement was reached and Roger McGinley sought financing from the Bank. McGinley filled

out a loan application with the Bank, listing the Bank as the first lienholder, Affiliated Foods second, and Gold Buffet third. This order of priority was unknown to Gold Buffet, who believed that it would be given second priority after the Bank. No one from the Bank ever communicated to Gold Buffet that Affiliated Foods had second priority.

The loan was approved and the sale was completed on July 18, 1983. The sale agreement between Gold Buffet and Roger and Leah McGinley included a provision giving Gold Buffet a vendor's lien in the inventory and merchandise superior to any and all claims or liens except the lien of the Bank.

Prior to the sale and without Gold Buffet's knowledge, Roger McGinley and Affiliated Foods entered into an agreement whereby Affiliated Foods provided merchandise and groceries to McGinley and McGinley gave Affiliated Foods a security interest in the grocery inventory. This security interest was perfected on July 18, 1983. Gold Buffet had no reason to know that the lien position it believed it had was jeopardized by Affiliated Foods' security interest. The president of Gold Buffet testified that based on his experience in the grocery business, he assumed that when Affiliated Foods supplied McGinley with merchandise, Affiliated Foods would be paid as deliveries were made—thus, providing protection for Affiliated Foods' interests.

The Bank filed its financing statement on July 21, 1983. Gold Buffet incorrectly filed its financing statement with the Madison County Recorder on August 31, 1983. This filing was corrected with a filing at the Secretary of State's office on March 4, 1985.

The McGinleys' operation of the grocery store proved unsuccessful and bankruptcy was filed. Affiliated Foods brought suit in 1985, seeking judgment on a note executed by Roger McGinley. The Bank and Gold Buffet appeared by intervention and asserted claims against Roger and Leah McGinley and Affiliated Foods. A receiver was appointed and the grocery inventory was liquidated, resulting in approximately $146,000 in proceeds. Affiliated Foods, the Bank, and Gold Buffet asserted claims of $74,311.57, $70,521.17, and $77,838.98, respectively. Following the district court's determination that Gold Buffet had third priority, Gold Buffet appealed claiming that Affiliated Foods should be relegated to a third priority position.

This case arises in equity and therefore our scope of review is de novo. Iowa R. App. P. 4. Iowa Code section 554.1203 imposes the obligation that parties must deal with each other in good faith. Section 554.1201(19) defines "good faith" as "honesty in fact in the conduct or transaction concerned." One commentator has stated that when a party acts in bad faith, it will usually be denied the benefit of any priority position it had obtained. 1 R. Anderson, *Uniform Commercial Code* § 1–203:14 (3d ed. 1981). The Uniform Commercial Code also states that the principles of equity, including estoppel, are applicable to the principles expressly embodied in the Code. Iowa Code § 554.1103 (1985); *see also* Summers, *General Equitable Principles Under Section 1–103 of the Uniform Commercial Code*, 72 Nw. U.L. Rev. 906, 919–23 (1978) (noting that equitable principles applicable to article nine include estoppel, unjust enrichment, equitable subrogation, and knowledge that others will be misled).

Gold Buffet contends that the district court erred in not finding that Affiliated Foods was estopped from asserting a security interest prior to the interests of the Bank and Gold Buffet. The elements of equitable estoppel are:

(1) a false representation or concealment of material facts;

(2) lack of knowledge of true facts on part of actor;

(3) intention that it be acted upon; and

(4) reliance thereon by the party to whom made, to his prejudice and injury.

*Manson State Bank v. Diamond*, 227 N.W.2d 195, 201 (Iowa 1975). The party asserting equitable estoppel must establish all of the elements by clear and convincing evidence. *Id.* The doctrine is "based on the grounds of public policy, fair dealing, good faith, and justice, and its purpose is to

forbid one to speak against his own act, representations, or commitments, to the injury of one to whom they were directed and who reasonably relied thereon." *Id.*

A. *False representation or concealment.* The Iowa Supreme Court has stated that false representation arises:

> where a person, by his acts, representations, or admissions, or even by his silence when it is his duty to speak, intentionally or through culpable negligence induces another to believe that certain facts exist, and the other person rightfully relies and acts on such belief, and will be prejudiced if the former is permitted to deny the existence of such facts.

*Id.* There is sufficient evidence in this case that Affiliated Foods induced Gold Buffet to believe that Gold Buffet would be given second priority, after the Bank. Gold Buffet had clearly made its belief about the priority positions known to Affiliated Foods, yet Affiliated Foods failed to disclose its own prior security agreement with Roger McGinley. Instead, Affiliated Foods permitted Gold Buffet to complete the sale transaction under the belief that Gold Buffet would get second priority. Such action by Affiliated Foods constitutes a false representation or concealment.

B. *Lack of knowledge of the true facts on the part of the actor.* Our supreme court has stated that one "whose own conduct or default got him into his predicament cannot successfully urge estoppel." *Id.* at 202. The court went on to note that where a "deceived party relies upon fraudulent misrepresentations of another his claim of fraud is not barred merely because he had not used due diligence to discover the true facts, even though they may be readily ascertained from public records." *Id.* at 203. In the instant case, it cannot be said that Gold Buffet's own conduct got it into the predicament it is in. Rather, Gold Buffet proceeded with the sale transaction without knowledge of Affiliated Foods' prior security interest. There was nothing that would indicate to Gold Buffet that the priority it believed it had was placed in jeopardy by Affiliated Foods. Hence, there is substantial evidence to support a finding that Gold Buffet had a lack of knowledge of the true facts.

C. *Intention that the representation be acted upon.* Our courts follow the rule that the party against which estoppel is sought "must knowingly take a position with intention it be acted upon." *Id.* at 204. The record indicates that Affiliated Foods was aware of Gold Buffet's assumption about the order of priorities. Nevertheless, Affiliated Foods remained silent and allowed Gold Buffet to complete a transaction in which Gold Buffet's interests had been subordinated. We believe the record supports the finding that Affiliated Foods intended that its misrepresentation be acted upon. Had it not possessed such an intention, it would undoubtedly have revealed the security agreement between itself and McGinley to Gold Buffet.

D. *Reliance by the party to whom the representation was made.* To prove this element, there must be substantial evidence that Gold Buffet relied upon Affiliated Foods' representation, to Gold Buffet's prejudice and injury. *See id.* The evidence indicates that Gold Buffet entered the sale transaction believing its interests were protected. Without such protection, it is doubtful that Gold Buffet would have completed the transaction. This is reflected by the fact that during the sale agreement negotiations, Gold Buffet's president stated that his company needed "to be covered in this thing [the transaction] in order to do [it]." The reliance on Affiliated Foods has resulted in injury to Gold Buffet in that Affiliated Foods takes priority over Gold Buffet in the limited proceeds from the sale of the inventory.

We therefore hold that the district court erred in not ruling that Affiliated Foods was estopped from asserting a secured interest prior to the interests of the Bank and Gold Buffet. Accordingly, we reverse.

In view of our reversal on the estoppel argument, we need not reach the other issues.

REVERSED.