**In re Bonnell FOREHAND d/b/a Lake Jackson Lawn & Garden, Debtor.**

**Bankruptcy No. 90–07201.**

United States Bankruptcy Court, N.D. Florida, Tallahassee Division.

Nov. 5, 1990.

Emily S. Waugh, Tallahassee, Fla., for creditor City Nat. Bank.

Leigh Hart, Tallahassee, Fla., for debtor.

William J. Miller, Tallahassee, Fla., trustee.

## ORDER ON CITY NATIONAL BANK'S OBJECTION TO SALE

LEWIS M. KILLIAN, Jr., Bankruptcy Judge.

THIS MATTER came to be heard before the Court on City National Bank's ("CNB") objection to the Chapter 7 Trustee's proposed sale of property free and clear of lien and encumbrances. CNB also asks this Court to determine that CNB is entitled to the proceeds of such a sale. The Trustee asserts that CNB did not properly perfect its security interest in the property of debtor and, therefore, does not have a perfected security interest in the property.

On July 19, 1990 the Trustee gave notice of his intention to sell the inventories and miscellaneous business property of the debtor by an auction to be held August 25, 1990. On August 2, 1990 CNB objected to the proposed sale and stated it possessed a security interest in all of the debtor's inventory, equipment, furniture, and personal property. CNB and the Trustee agreed to allow the property to be sold but to put the proceeds of the sale in trust pending this Court's determination as to whom is entitled to the proceeds. Having considered the arguments of counsel together with the memorandum of law filed in support of both motions, and for the reasons set forth below it is determined that CNB has a properly perfected security interest in the debtor's property and is entitled to the proceeds of the sale of such property.

Bonnell Forehand began to operate the business known as Lake Jackson Hardware ("Hardware"), which was located at 3511 North Monroe Street in Tallahassee, in late 1986 or early 1987. A fictitious name registration for Hardware was filed with the Clerk of the Circuit Court on December 17, 1987. About that time, CNB entered into a

loan agreement with Hardware, Harvey Bonnell Forehand, individually and Joan Forehand, individually. Along with the individual signatures, the agreement was signed "Lake Jackson Hardware By: Harvey Bonnell Forehand." The agreement was secured by a second mortgage on the Forehands' home and all accounts receivable, contract rights, inventory, equipment, furniture and personal property then owned by or owed to Hardware and thereafter acquired by Hardware ("business property"). The loan was in the amount of $71,000 and allowed Forehand to purchase hardware, feed, fixtures and, as Forehand said, "everything in the store." On February 2, 1988, CNB filed a UCC–1 Financing Statement that listed Hardware as the debtor. The financing statement was signed "Lake Jackson Hardware By: Harvey Bonnell Forehand."

In July 1988, Forehand sold the property to a Mr. Chastain. Subsequently, in August 1989, Chastain filed for bankruptcy and the trustee in Chastain's bankruptcy abandoned the property in which CNB had a security interest.

CNB, which had a security interest in all Hardware's equipment and inventory, was never given effective notice of the transfer, as required by Article Six of the UCC, nor did it give subsequent approval of the transfer. Therefore, CNB's security interest remained valid and Forehand remained liable on the debt. In October 1989, CNB transferred the property back to Forehand and extended a line of credit to Forehand to be used by Hardware. This was also secured by the business property and was signed, "Lake Jackson Hardware By: Harvey Bonnell Forehand," and by Forehand, individually. This line of credit allowed the debtor to purchase inventory for the business. A month after CNB transferred the property back to Forehand he opened a new business at 3416 North Monroe Street. Forehand used the same business property that had been transferred back to him. When he opened this business he used the trade name Lake Jackson Hardware. In mid-December he claims to have changed the name to Lake Jackson Lawn and Garden. He decided to use the new name to avoid any association with Chastain's bankruptcy. However, he continued to conduct all banking activities under the name "Lake Jackson Hardware" and he did not register the name Lawn & Garden with the Department of Revenue, nor did he file a fictitious name registration in that name.

CNB and the Trustee dispute whether CNB's filing of the UCC–1 under the name of Lake Jackson Hardware was sufficient to perfect CNB's security interest in the debtor's inventory, furniture, fixtures and equipment at the debtor's new place of business. Currently, approximately $64,-000 is owed on the original loan and approximately $17,000 is owed on the line of credit.

The Trustee argues that a UCC–1 filed only under a trade name used by an individual is not sufficient to protect a creditor's interest. The Trustee cites, as support, the Official Comment of UCC 9–402(7) which states that the subsection, "[i]n the case of individuals, contemplates filing only in the individual name, not in a trade name ... Trade names are deemed to be too uncertain and too likely not to be known to the secured party or person searching the record to form the basis for a filing system." The Trustee goes on to state that the names of Lake Jackson Hardware and Harvey Bonnell Forehand are completely different and a reasonably prudent searcher conducting a UCC search should be allowed to rely upon the name of the individual debtor in conducting his search. It is his contention that if the code does not require filing under a trade name of an individual, then it is only logical that a searcher need not search under trade names of individuals.

CNB argues that it properly filed the financing statement by listing the debtor's name as "Lake Jackson Hardware." CNB states that at the time of the loan the debtor did business solely under the name of Lake Jackson Hardware and that any act of prudence would have readily caused a creditor to know the debtor's trade name. In fact, it argues, by filing under the trade name it provided creditors with equal notice of its security interest. Therefore,

CNB has met the "notice goals" of the UCC.

## FINANCING STATEMENT

■ To determine whether a security interest may attach to the assets of the estate in bankruptcy, the trustee is considered to be a hypothetical lien creditor. Unless a creditor's interest is perfected, as against the trustee in this hypothetical position, its interest in the collateral is not effective. *In re McBee*, 714 F.2d 1316, 1321 (5th Cir.1983). To perfect a security interest in Florida a creditor must comply with the filing requirements set forth in Florida Statutes § 679.402. That provision states that a financing statement is sufficient if it gives the names of the debtor and the secured party, is signed by the debtor, gives an address of the secured party, gives a mailing address of the debtor, and contains a statement indicating the types of collateral. Subsection (6) of that statute states, "[a] financing statement sufficiently shows the name of the debtor if it gives the individual, partnership, or corporate name of the debtor." It is the Trustee's argument that CNB did not comply with this statute because it filed in the name of Hardware and not in the name of Forehand, the bankruptcy debtor. Therefore, CNB's asserted interest is not effective.

The official comment to UCC 9–402(7) states that, "[i]n the case of individuals, it contemplates filing only in the individual name, not in a trade name." The Trustee states that the controlling case of *In re Matter of Glasco, Inc.*, 642 F.2d 793 (5th Cir.1981)[1] specifically implies that the court would have, had the issue been before it, required, in a case involving a sole proprietor, a creditor to file under the assumed trade name *and* the individual's name. In that case, which arose in this district, the debtor operated his business under the name "Elite Boats, Division of Glasco, Inc." However, its legal corporate name was "Glasco, Inc." On the UCC–1 financing statement, the creditor listed the debtor's name as "Elite Boats, Division of Glasco, Inc." The court determined that each case must be judged on its own facts, with the focus on whether potential creditors would have been misled as a result of the name the debtor was listed by in the bank's financing statement. The court held that the listing of the debtor as "Elite Boats, Division of Glasco, Inc." rather than as "Glasco, Inc." was not seriously misleading, that the financing statement was in substantial compliance with the filing requirements, and that the filing was sufficient to perfect the bank's security interest.

Two years later, the same court, in *McBee*, answered the question of how it would rule in a case involving a sole proprietor. Although the *McBee* decision in not binding, it is very persuasive and is based on *Glasco* which is binding. In *McBee* a sole proprietor operated a business with the name "Oak Hill Gun Shop." The bank loaned the money to McBee and took a security interest in all present and after acquired inventory of the gun shop. The bank then filed the UCC–1 financing statement under the name "Oak Hill Gun Shop." The court recognized the general rule that in most cases of individual ownership, filing under a trade name would be seriously misleading. However, it also recognized the rule not to be absolute and stated that it should not be applied rigidly "without reference to the Code's overriding goal of sufficient 'notice'." Rather, the court stated, "in some cases filing under a trade name would not be seriously misleading and would provide creditors with equal, if not superior, notice of prior security interests." The court found that the bank's filing was an exception to the rule and that the bank's filing should reasonably have been discovered by a subsequent creditor securing the same collateral. Therefore, the bank held a perfected security interest.

A leading UCC treatise adopts the same position and states that it believes that "where a reasonable diligent searcher could, because of the notoriety of the trade name, be likely to discover the filing," the filing is sufficient when filed under a trade

---

**1.** All decisions in the Fifth Circuit prior to October 1, 1981 became binding precedent in the Eleventh Circuit per *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981).

name. *J. White & R. Summers, Uniform Commercial Code* § 24–18 (3rd. ed. 1988).

There is not any doubt that the purpose of the filing system is to give notice to interested parties that a security interest exists in property of the debtor. *Owen v. McKesson & Robbins Drug Co.,* 349 F.Supp. 1327 (N.D.Fla.1972). Additionally, the financing statement is effective so long as it "put[s] any searcher on inquiry." *In re Excel Stores, Inc.,* 341 F.2d 961 (2d Cir.1965). As mentioned, the bankruptcy trustee is put into the position of a hypothetical judicial lien holder. Therefore, the question in this case is whether the trustee, in his hypothetical position, would have been put on inquiry that the bank had a perfected security interest in the business property had he made a reasonably prudent search. If we were to apply the general rule that filing under a trade name is seriously misleading we would have to find the bank's filing was insufficient. However, as stated in *Glasco,* each case must be judged on its own facts and be determined as to whether potential creditors would have been misled by CNB's filing. Just as in *McBee,* the bankruptcy debtor in this case operated his business as a sole proprietor, the bank took a security interest in all present and after acquired inventory and the bank filed the financing statement under the name of the business. Additionally, in this case, the loan was made to Forehand so that he could purchase the inventory of his business, Forehand operated the business under the Hardware name since 1986 or 1987, and he was known under that trade name. Moreover, the property was used solely for business purposes and was not used personally and it was located at the business and not at Forehand's residence. It is our view that any prudent subsequent creditor who was considering taking a security interest in the assets of Forehand's business would search for a prior financing statement under the name of Hardware and not Forehand's. Such a prudent searcher would have found that CNB had a prior security interest in the business property. Therefore, we find that CNB's filing under the name of Hardware was not seriously misleading and was suffi-cient to put a reasonably diligent searcher on notice of CNB's security interest in the property.

## CHANGE OF NAME

The Trustee argues that if CNB's security interest was valid at the time of filing, it was not valid at some point after Forehand changed the business name to "Lake Jackson Lawn & Garden" ("Lawn & Garden"). CNB contends that their security interest remained valid after the change of name. It asserts that even though the debtor used the Lawn & Garden name he also continued to use the Hardware name. The sign on the building continued to read Hardware, the business continued to transact all of its banking business under the Hardware name, Forehand signed an extension agreement with the bank under Hardware, the telephone book still listed the company as Hardware, he remained registered with the Florida Department of Revenue under Hardware, and his occupational license was in the name of Hardware. CNB contends that it did not have to refile a financing statement to protect its interest after the name change because it acted in good faith and was without knowledge of the name change. Additionally, the new name was sufficiently similar to the old name and would put a reasonably prudent searcher on notice. CNB further contends that even if it were required to refile its financing statement, the original financing statement was valid for four months after the name change per Florida Statute § 679.402(6).

> Florida Statute § 679.402(6) states,
> [w]here the debtor so changes his name or in the case of an organization its name ... that a filed financing statement becomes seriously misleading, the filing is not effective to perfect a security interest in collateral acquired by the debtor more than 4 months after the change, unless a new appropriate financing statement is filed before the expiration of that time.

The debtor did not begin using the name of "Lake Jackson Lawn & Garden" until mid-December 1989. If we were to find that

the debtor did change the name of the business, per the above statute, it must be found that CNB's financing statement was valid at least until April of 1990.

Moreover, if this was a change of name, did the change cause the filed financing statement to be so seriously misleading that it became insufficient after April 1990. This court has previously stated,

> where ... the creditor has acted in good faith and is without knowledge of the transfer of its collateral and name change of the debtor, the courts have concluded that the original filing remains effective after the transfer to perfect the interest of the filer over a bankruptcy trustee or the competing interest of subsequent creditors filing under the debtor's new name.

*Hatfields & McCoys, Inc. v. First Tampa Capital Corp.*, 78 B.R. 312, 315 (Bkrtcy.N.D.Fla.1987). In that decision we went on to state that "third party lenders must take reasonable steps to search beyond the immediate record to discover the source of the debtor's title or any previous names under which a security interest may be filed." *Supra* at 315–316. Whereas, the debtor continued to transact with the bank after the name change in the same manner in which he had engaged prior to the change, the bank was without notice that the debtor had changed his name from Hardware to Lawn & Garden. Therefore, the bank was not required to refile its financing statement after the name change.

In any event, the debtor continued to use the name Hardware. He kept the name on the building, he continued to transact banking business in that name, he listed Hardware in the telephone directory, that name remained registered with the Florida Department of Revenue, and his occupational license remained in the name Hardware. All the evidence indicates that Lawn & Garden was an addition to the name Hardware and not a change of name. Therefore, CNB's security interest remained valid after April 1990. Accordingly, it is hereby

ORDERED AND ADJUDGED that CNB holds a perfected security interest in the business property of the debtor. Therefore, the proceeds from the sale of the debtor's equipment that is being held in trust be and same is hereby awarded to CNB to the extent of the amount of its security interest.

DONE AND ORDERED.